TEXARKANA & FORT SMITH RAILWAY COMPANY *v.* BEMIS
LUMBER COMPANY.

Opinion delivered March 3, 1900.

1. RAILROAD—ACCOMMODATION NOTE—LIABILITY.—Where the president of a Texas railroad company borrowed money in that state, giving a note to which he signed the company's name, by himself as president, and stated to the payee that he was borrowing the money to pay off the company's employees, and the transaction was so understood by the payee, though the money was used by such president for his individual purposes, an instruction that the note was void under the laws of Texas if it was given for accommodation of such president was properly refused as not sustained by any proof that the note was given for accommodation. (Page 548.)

2. CORPORATION—PRESIDENT—APPARENT AUTHORITY.—Where the president of a corporation has been in the habit of signing its name to notes, without the express authority of the board of directors, of which custom said board was cognizant, the company will be bound by a note so signed as though express power to sign it had been conferred. (Page 550.)

Appeal from Little River Circuit Court.

WILL P. FEAZEL, Judge.

STATEMENT BY THE COURT.

Appellee sued appellant on the following note:

"$300.                    TEXARKANA, TEX., November 16, 1891.

"Sixty days after date we promise to pay to the order of A. Weinstein three hundred dollars at————. If collected by law or placed for collection, we agree to pay 10 per cent. for attorney fees.    [Signed]

"TEXARKANA & FT. SMITH RAILWAY CO.
"By W. L. WHITAKER, President."

Indorsed on face:

"Protested for non-payment January 21, 1892.
                [Signed]    "W. ESTES, Notary Public."

Indorsed on back:

"W. L. Whitaker, Benj. Whitaker.

"Assigned to Bemis Lumber Co., without any recourse or liability of any kind whatsoever on me. This 21st day of December, 1894. [Signed.] A. WEINSTEIN."

Appellant and appellee were both corporations organized under the laws of the state of Texas. The complaint alleged that the note was executed in Texas, and there delivered for a valuable consideration to Weinstein, who for a valuable consideration transferred same to the appellee. The prayer of the complaint was for judgment against appellant and the indorsers, for the debt, interest, protest and attorney's fees, and for costs.

Appellant, for answer to the complaint, denied that the note was executed by appellant or by its authority; averred that it was executed by W. L. Whitaker solely for himself and Benjamin Whitaker; denied that the board of directors had knowledge of the execution of the note until after this suit was brought; alleged that the appellee recovered judgment on said note in the Nevada circuit court against W. L. Whitaker and Benjamin Whitaker, and that said judgment had been satisfied by them or other voluntary payers for them; denied that appellee was the owner of the note; alleged that appellee had acquired possession of the note with full knowledge of all the facts, and after its maturity; that appellant had received no consideration for the note; pleaded the laws of the state of Texas, and alleged that said note was void under the laws of Texas, as well as under the laws of Arkansas. By an amendment to its answer, appellant alleged that the payment of said note to Weinstein was secured by collaterals furnished by W. L. and Benjamin Whitaker; that said collaterals consisted of stock in certain corporations, and was of a greater value than the amount of said note; that appellee purchased said shares from Weinstein and the Whitakers, and that part of the consideration was the payment by appellee to Weinstein of the note and judgment thereon; that appellee had paid to Benjamin Whitaker large sums of money in consideration for said collaterals, knowing at the time that the same were pledged to Weinstein for

the payment of this note; that appellee was estopped from complaining against appellant.

The proof tended to show that appellant, at the time of the execution of the note sued on, owned and operated a railroad from Texarkana, Texas, north into Little River county, Arkansas, and was then engaged in the construction of its road in the state of Arkansas; that W. L. Whitaker was the president of appellant railway company at the time the note in suit was executed, and was the principal party interested in said railroad, and owned nearly all of the capital stock of the company; that he was in the habit of signing the name of appellant, by himself as its president, to notes, drafts and bonds, without express authority from the board of directors, and that this was the "course of business under which the business of the company" was then being conducted; that, there were but few meetings of the board of directors, and that W. L. Whitaker was the general manager of the company; that, in 1889, F. M. Henry, one of the directors, at a meeting of the board, brought up the question as to Whitaker's right to execute notes in the name of the company, and the matter was discussed at the meeting, but no action was taken by the board. "It was not a very formal matter." The matter was afterwards mentioned on the streets to Whitaker by some members of the board. Whitaker continued to execute notes on behalf of appellant as president from 1889 to 1892. His authority to do so was never challenged, except at the times and in the manner mentioned above. On November 19, 1891, W. L. Whitaker, as president of the Texarkana & Fort Smith Railway Coompany, in the office of the company in Texarkana, Texas, applied to A. Weinstein for a loan of money to the company. He then and there stated to Weinstein that he was bound to have some money to pay off the hands who were at work in constructing said railroad. Weinstein made the loan requested to the amount of the note, less the discount, and Whitaker gave Weinstein the note in suit, indorsed by W. L. Whitaker and Benjamin Whitaker, for the money. Weinstein understood from Whitaker at the time that the money was being loaned on the railway company for the purpose of paying off its employees

for labor done in the construction of the road, and if he had not so understood he would not have loaned the money. Prior to the execution of this note, Weinstein had discounted $2,000 of this railway company's notes signed by W. L. Whitaker, president, payable to Grigsby Bros., who were contractors engaged in the construction of the railroad. Appellee paid to Weinstein the amount due on the note, and Weinstein indorsed the note to appellee without recourse on him.

W. L. Whitaker testified that he borrowed the money from Weinstein to take up his individual note at Texarkana National Bank, and used the money for that purpose; that he signed the name of appellant as maker of the note without any authority; that the note was accommodation paper, so far as the railroad was concerned; that he was putting up his own money in the construction of the road, etc. But Whitaker nowhere denies affirmatively the testimony of Weinstein. "He told me he was bound to have some money to pay off the hands on the said railroad. I loaned him the amount of the note, less the legal discount, for the purpose of paying off these hands." Whitaker only testified that he did not remember any such statement.

Art. 12, § 6 of the constitution of Texas is as follows: "No corporation shall issue stock or bonds except for money paid, labor done, or property actually received, and all fictitious increase of stock or indebtedness shall be void."

A statute of Texas provides that no corporation created under its laws "shall employ its stock, means, assets or other property, directly or indirectly, for any other purpose whatever than to accomplish the legitimate objects of its creation." Rev. Stat. 1895, art. 665.

The only statute of Texas relative to the power of railroad corporations to borrow money is the following: A railroad corporation "shall have the right from time to time to borrow such sums of money as may be necessary for constructing, completing, improving or operating its railway, and to issue and dispose of its bonds for any amount so borrowed, and to mortgage its corporate property and franchise to secure the

payment of any debt contracted by such corporation for the purposes aforesaid." *Id.* art. 4486.

Under the laws of Texas the provision in a note for the payment of attorney's fees is valid, and can be enforced. The note in suit was executed in Texas, and all the parties thereto were at the time of its execution residents and citizens of Texas.

The following, in substance, was testified by W. N. Bemis: The Bemis Lumber Company owned the note sued on at the time of the institution of this suit, and no part of said note has ever been paid. The Bemis Lumber Company paid Weinstein the amount due on this note in order to relieve the stock of the Ozan Lumber Company, and the stock of the Prescott & Northwestern Railroad Company, which stock had been pledged by Benjamin Whitaker to A. Weinstein to secure the indebtedness due by Benjamin Whitaker to A. Weinstein, including this note on which Benjamin Whitaker was liable as indorser. On payment of the amount due thereon to A. Weinstein, the Bemis Lumber Company took up the note. Before paying the note the Bemis Lumber Company tried to get A. Weinstein to sue the railroad company on it, but Weinstein, knowing that his security was ample, refused to sue, and in order to bring suit, the Bemis Lumber Company took up the note. The Bemis Lumber Company did not take up the note voluntarily. The money was due Weinstein from the Texarkana & Ft. Smith Railway Company, and the Bemis Lumber Company took up the note to relieve the stock, and then sued the railway company. It paid the money due on this note to Scott & Jones, attorneys for A. Weinstein. The note was taken up before the Bemis Lumber Company had a settlement with Benjamin Whitaker. Weinstein had nothing to do with the Whitaker trade, and Whitaker had nothing to do with the Weinstein trade, so far as this note was concerned.

When the Bemis Lumber Company paid the amount due on the note sued on, and the note was transferred to the company, it instructed Scott & Jones, as its attorneys, to bring suit on the note at once.

Such other facts as may be necessary will be stated in the opinion.

*William T. Hudgins*, for appellant.

The note sued on was void and unenforceable, as against the railroad company, because the corporation had no power to make it without receiving value for it. Accommodation paper of a corporation is void. Texas const. art. 12, § 6; Ark. const. art. 12, § 8. That such an obligation is void, see: 116 U. S. 491; 41 Ark. 331; 167 U. S. 362; 40 S. W. 328; 88 Tex. 570; S. C. 30 S. W. 1055; 167 U. S. 362; 120 U. S. 287–303; 139 U. S. 24–61; 50 Conn. 167; 3 McLean, 102; *ib.* 276; 27 Cal. 255; 4 McLean, 8; *ib.* 387; 18 Ohio, 151; 8 Ala. 827; 101 Mass. 57; 57 Mo. 503; Green's Brice's Ultra Vires, 88; 1 Dan. Neg. Inst. 197, 807; 1 Rand. Com. Pap. § 334; 2 Beach, Priv. Corp. §§ 391, 422. Even *bona fide* holders of paper executed in violation of express statute are not protected. 1 Dan. Neg. Inst. § 807; 9 Exch. 244; 2 Beach, Priv. Corp. 699, n.; 11 Otto, 71; 139 U. S. 59–60; 163 U. S, 581; 40 S. W. 330; 165 U. S. 538; 30 S. W. 1057; Rand. Com. Pap. § 386. The note had been legally paid by the real obligors. 1 Rand. Com. Pap. § 795; 3 *id.* §§ 1396, 1426; 76 Ind. 13. Appellee had no power under its charter to acquire the note as it did, and it is not a *bona fide* holder. Rand. Com Pap. § 986; 13 Pet. 519. Appellant was discharged by the release of the principal obligors. Rand. Com. Pap. § 946 *et seq.* The makers were discharged by appellee's appropriation of the collaterals. 2 Rand. Com. Pap. § 951. Appellee is estopped by having deprived appellant of its right of subrogation to said collaterals. 2 Rand. Com. Pap. 984.

*Scott & Jones*, for appellee.

The note is governed by the Texas law. 44 Ark. 215; 46 Ark. 66; 22 Ark. 130. The note was good in the hands of a *bona fide* holder, at all events. 34 S. W. 344, citing: 7 Atl. 488; 1 Dan. Neg. Inst. (4 Ed.) § 386; 1 Am. St. Rep. 136 n.; 8 Atl. 472; Cook, Stocks and Stockholders § 25; 11 Paige, 635; 73 Ga. 641. Private corporations have the implied power to borrow money and issue negotiable securities therefor. 4 Thompson, Corp. § 5697; 78 Pa. St. 370; 41 Pa. St. 278; 44 N. H. 127, 135; 67 Ala. 253; 27 N. Y. 546; S. C. 84 Am. Dec. 298;

7 Am. & Eng. Enc. Law (2 Ed.), 771, 779, 780; 4 Th. Corp. §§ 5731, 5734; 18 How. Pr. 374; 9 Ind. 359; 27 N. Y. 546. *Ultra vires* commercial paper is valid in the hands of a *bona fide* holder for value. 28 Minn. 291; S. C. 41 Am. Rep. 285; 11 Paige, 635; 35 N. Y. 505; 10 Ill. 48; 101 Mass. 57; 22 N. Y. 258, 289; 14 Wall. 282; 2 Black, 722; Ang. & Ames, Corp.§ 268; Green's Brice's Ultra Vires, 273–4, 729; 4 Thompson, Corp. §§ 5739–40, 4800; 13 N. Y. 515; 27 N. Y. 546. A private corporation is responsible for the fraud of its agent, and is bound by his acts within the apparent scope of his authority. 5 Thompson, Corp. §§ 6321, 6322; 4 *ib.* §§ 4816, 4824, 4826, 5738, 4958, 4933, 5707; 16 N. H. 26; 2 Morawetz, Corp. § 679, 588; 87 N. Y. 628; 36 N. J. 548; 26 N. Y. 505; 40 S. W. 328; 167 U. S. 362. The established course of dealing was sufficient to authorize the president of the appellant company to bind it by note. 62 Ark. 7; 54 Ark. 58; 30 Vt. 158, 170; 3 Thompson, Corp. § 3938; 62 Ark. 33; Morawetz, Corp. 577–8; 34 N. Y. 50; 1 Beach, Priv. Corp. 189; 86 Mo. 125; 46 Ill. App. 456; 104 U. S. 492; 43 N. E. 203; 61 N. W. 904.

WOOD, J., (after stating the facts.)   Appellant contends, first, that it is not liable, because "the note in suit was executed by its president, W. L. Whitaker, solely for his own private accommodation."   On this point the court instructed the jury as follows:   "If you believe from the evidence that the note sued on was executed by W. L. Whitaker for his own private use or accommodation, and that the defendant received no consideration therefor, and that such facts were known to the plaintiff or to said Weinstein before Weinstein lent the money to Whitaker, then you should find for the defendant."   And, among others, refused the following:   "If you believe from the evidence that the defendant, the Texarkana & Ft. Smith Railway Company, did not receive any consideration for the note sued upon, but that said note was executed in its name by its president, W. L. Whitaker, for his own private use or accommodation, or for the use and accommodation of himself and Benjamin Whitaker, and was indorsed by him and said Benjamin Whitaker before the same was delivered to the said A. Wein-

stein, then the plaintiff is not entitled to recover against the Texarkana & Ft. Smith Railway Company, and you will find a verdict for defendant."

If the note sued on was really understood by the parties, payer and payee, at the time of its execution to be for the accommodation of W. L. Whitaker, then, under the laws of Texas, by which it must be construed, it was an *ultra vires* contract, and absolutely void. Const. Texas, art. 12, § 6; Rev. Stat. Texas, 1895, arts. 665, 4486 *supra*.

A contract prohibited by the constitution or statute of a state, although negotiable in form, is not so in fact, and no innocence or ignorance on the part of the holder will make it enforceable. It is an absolute nullity. 1 Dan. Neg. Inst. § 807; *Union Pac. Ry. Co.* v. *Chicago, etc. R. Co.*, 163 U.S. 581; *Central Trans. Co.* v. *Pullman's Palace Car Co.*, 139 U. S. 59, 60; *McCormick* v. *Market National Bank*, 165 U. S. 538; *Northside Ry. Co.* v. *Worthington*, 30 S. W. Rep. (Texas) 1057; S. C. 88 Texas, 569; *South Texas National Bank* v. *Lagrange Oil Mill Co.*, 40 S. W. Rep. (Texas) 328. There is a marked distinction between such contracts and those which are merely in excess of power expressly conferred or necessarily implied, a failure to observe which has led to some confusion in the authorities.

If it be conceded, therefore, that the note in suit was executed solely for the accommodation of W. L. Whitaker, or that there was evidence to justify such a finding, the instruction given by the court was erroneous. We do not find, however, that there was any evidence to warrant a finding that the note was given for accommodation. True, Whitaker testified: "I executed this note for my own benefit, and signed the railway company as maker without any authority, because it was the only way I could raise money." Such might have been the mental reservation of Whitaker at the time he executed the note, or it might have been the conclusion to which he came when giving his testimony. But there is nothing in the proof to show that it was the understanding between the railway company, the maker, and Whitaker, or between the railway company and the payee, Weinstein, that the note was exe-

cuted for Whitaker's benefit individually. On the contrary, the positive proof of what actually occurred when the note was executed, uncontradicted, is that the money was loaned to the railway company for the purpose of paying off its employees for labor done in the construction of the road. There is nothing upon the face of the paper to indicate that it was given for accommodation. The presumption is in view of the constitutional provision, that it was not. The positive proof of the payee is that at the time of the execution of the note the declarations of the agent of the railroad, acting for it, were as stated above. Such then must be taken as the uncontroverted fact. A mental reservation in the mind of one of the parties, not communicated to the other at the time of the making of the contract, or a conclusion formed afterwards as to the effect of the contract, does not even tend to show what the contract really was. The question was not what one or both of the parties thought or said about the note afterwards, but what did they think and say at the time of its execution. This only could throw any light upon the real character of the intrument. The contract must be determined by what they said contemporaneous with the making thereof. We are of the opinion, from the proof, that the appellant's request for instructions on the accommodation phase of the note, and the court's charge as given orally, raised a supposititious issue, suggested in the answer, but not sustained by the proof.

Aside from the question of payment, which we will discuss later, the true theory of the liability or non-liability of appellant under the evidence was presented in the following instruction: "If the jury find from the evidence that W. L. Whitaker, as president of the Texarkana & Fort Smith Railway Company, executed the note sued on, and that in the execution of said note he was acting within the scope of his actual authority, or within the scope of his apparent authority, and that he received from A. Weinstein $300, less the legal discount or the discount agreed on, and delivered said note to said Weinstein for said money, and that he represented to said Weinstein that the money was being borrowed by defendant railway company, and for the purpose of paying laborers the money due them for the

construction of said railroad, and that Weinstein loaned said money to defendant for that purpose, then did said railway company become liable to pay said note." The note, having been given for money used in the construction of the railroad, was within the express power of the corporation to make. Did the president have authority to make it? He "was in the habit of signing the railway company's name to notes, etc., without authority from the board of directors." The directory was cognizant of the fact. The matter had been brought to their attention, and was discussed in their meeting, but no formal action was taken, and the president continued to · exercise such authority for years. The board of directors must be held, under the circumstances, to have acquiesced, and the corporation was bound for the same, as though the board of directors had, by formal action, conferred upon the president express authority to make the note. *Estes* v. *German National Bank*, 62 Ark. 7; *City Electric Ry. Co.* v. *First National Bank*, 62 Ark. 33; *Mining Co.* v. *Anglo-Californian Bank*, 104 U. S. 192.

As to the plea of payment, the facts, in the main, are correctly stated in appellee's brief as follows: "Weinstein held the joint notes of W. L. Whitaker, Benjamin Whitaker and T. L. L. Temple, aggregating $3,666. He also held the note here sued on. Weinstein filed two suits in the Nevada circuit court,—one against the Whitakers and Temple on the joint notes for $3,666; the other on the note herein sued on against the Whitakers alone. Attachments were issued in both suits, and levied on 1,480 shares of the capital stock of the Ozan Lumber Company and 150 shares of the capital stock of the Prescott & Northwestern Railway Company, as the property of Benjamin Whitaker. To secure this entire indebtedness to Weinstein, Benjamin Whitaker executed a deed of trust to W. R. Grim, conveying to Grim, as trustee, all of the lumber company stock and all of the railway company stock which had been levied on under the orders of attachment. The suits were filed and attachments levied on April 8, 1892. This was not done, as appellants states, in settlement of the indebtedness due to Weinstein, but to secure the payment of that indebtedness. Afterwards appellee purchased the lumber company stock and the rail-

way company stock from Benjamin Whitaker, and, in order to relieve it from the lien of the Grim deed of trust, paid to Weinstein the entire indebtedness due him. Appellee paid Weinstein the amount due on the note in this controversy long before he concluded the deal with Whitaker for the stock, and had the note transferred to him. Judgments by default were rendered against W. L. and Benjamin Whitaker in the Weinstein suits on July 25, 1894. These judgments were paid off at different times, but W. N. Bemis could not say whether full payment was made before or after he closed his deal with Benjamin Whitaker for the stock. The Bemis Lumber Company had tried to get Weinstein to sue appellee on this note, but Weinstein declined to do so, because he was amply secured. The lumber company then paid to Scott & Jones, Weinstein's attorneys, the amount due on the note, and had the note transferred to it by Weinstein, and instructed Scott & Jones to sue appellant on the note, which was done. There had been previous dealings between Benjamin Whitaker and the Bemis Lumber Company, and Mrs. J. H. Bemis, the mother of the Bemis boys, who organized the Bemis Lumber Company. When the deal for the stock was finally consummated, and settlement made with Benjamin Whitaker, the Bemis Lumber Company neglected to include in the settlement the note in suit, and a balance was found to be due Whitaker on settlement of $21,000, which was paid him by the Bemis Lumber Company, and the stock was transferred to H. D. K. Bemis. This note formed no part of the consideration paid by Bemis Lumber Company for the stock. The claim made by appellant in its brief is that Benjamin Whitaker paid this note. This is contradicted by Benjamin Whitaker himself. His testimony on this point is as follows: ''Judgment on this note has been paid off and satisfied by the Bemis Lumber Company to A. Weinstein. Nothing is due A. Weinstein on note or judgment, because the same has been paid to him by the Bemis Lumber Company. I don't know how, from whom, nor under what circumstances the Bemis Lumber Company obtained possession of said note. I think they must have gotten it from Weinstein or his attorney. Q. Did not the Bemis Lumber Company pay to A. Weinstein the amount

due on this note? If yes, state the circumstances under which they paid it." Ans. "Yes; under the following circumstances: Weinstein had attached some of the stock of the Ozan Lumber Company, and some of the stock of the Prescott & Northwestern Railway Company in which some of the Bemises were interested, but which stood in my name, and the Bemis Lumber Company paid off the note to relieve the stock."

The finding that the note had not been paid was justified by the evidence. We find no reversible error in any of the other assignments presented by counsel.

Affirmed.

BATTLE, J., did not sit in this case.