## WOLF v. ERWIN & WOOD COMPANY.

### Opinion delivered June 20, 1903.

1. ATTACHMENT—INVALID MORTGAGE.—Although a chattel mortgage which permits the mortgagor to retain a portion of the property upon substituting other property of the same kind therefor is void *pro tanto*, such invalidity does not furnish a ground for attachment where such portion is afterwards embraced in a valid mortgage to the same mortgagee. (Page 440.)

2. CORPORATION—AUTHORITY OF PRESIDENT TO EXECUTE DEED.—Where all of the directors of a corporation met and agreed that a mortgage on the corporate property should be executed, and a few days later, at a meeting at which all of the directors except the president were present, it was ordered that the president execute such mortgage, the authority of the president to execute the mortgage sufficiently appears. (Page 443.)

3. CORPORATION—PREFERENCE OF DIRECTOR.—Where a corporation is not shown to have been insolvent, its right to prefer one of its directors and officers cannot be questioned. (Page 444.)

Appeal from Union Circuit Court in Chancery.

CHARLES W. SMITH, Judge.

Affirmed.

*H. C. Harper, W. D. Jamison, Neill C. Marsh, James Marsh, Jesse B. Moore, Morris M. Cohn,* for appellants.

The pretended deed of trust was a part of the scheme to defraud. Appellees could not profit by it. 33 Ark. 63; 21 Ark. 22. The directors were trustees of the property of the company for creditors. 33 Ark. 305; 38 Ark. 17. As a director, Albie could

not be a *bona fide* purchaser. 130 U. S. 43. He was charged with notice of the fraud. 63 Fed. 496. The pretended mortgage was not authorized. 55 Ark. 473. The law of Iowa will be presumed the same as ours. 58 Ark. 26; 50 Ark. 237; 51 Ark. 459; 17 Ark. 154; 43 Ark. 209. The mortgages were never recorded, and this would make the attachments prior to Albie. 9 Ark. 112; 15 Ark. 73; 18 Ark. 85; 20 Ark. 190; 32 Ark. 598; 37 Ark. 91; 42 Ark. 140. The fraudulent representations defeat the attempt to rely on the mortgages. 1 Big. Fr. 366; 66 Ark. 98; 10 N. H. 413; 6 Vt. 240; 10 Johns. 461; 13 Mass. 51. The attachment was not necessary. Sand. & H. Dig. § 3134; 56 Ark. 73; 56 Ark. 476.

*Smead & Powell,* for appellees.

The burden was upon appellants to show the invalidity of the mortgages. 1 Cob. Chat. Mortg., § 400; 93 Ill. 153. The *lex loie contractus* will govern the legality of the execution of the deed of trust. 3 Ark. 96; 6 Ark. 142; 7 Ark. 231; 14 Ark. 189; 22 Ark. 125; 25 Ark. 261; 34 Ark. 640; 40 Ark. 423; 44 Ark. 213; 46 Ark. 66; 47 Ark. 54; 61 Ark. 1, 329. A chattel mortgage being valid on its face, the burden of proof is on the attacking party. 2 Cobb Chat. Mortg., § 767; 28 Pac. 257; 18 Ark. 123; 149 Ill. 635; 77 Ind. 383; 145 Mo. 91; 35 S. W. 807; 39 Ark. 325; 41 Ark. 193.

*J. B. Moore,* for appellants, in reply.

As to lumber and merchandise, the mortgage was void *pro tanto* as against creditors. 46 Ark. 122; 41 Ark. 186; 39 Ark. 325; 50 Ark. 289. Albie can not profit by his own fraud. 101 Ind. 293; Mech. Ag. § 743. The board of directors can only act as a board, 52 Ark. 511; 39 N. J. 207; 26 Minn. 43; 42 Mich. 332; 47 Iowa, 11; 1 Mor. Priv. Corp. § 531-2; 55 Ark. 475. There was constructive as well as actual fraud in the execution of the deed of trust. 35 Ark. 304; 38 Ark. 17; 59 Ark. 580. The notes and instruments are not sufficient to remove the suspicion of fraud. 68 Ark. 162; 50 Ark. 289, 314, 447, 562; 43 S. W. 763; 64 Ark. 415, 505; 32 Ark. 251; 46 Ark. 542; 47 Ark. 301; 49 Ark. 20; 58 Ark. 446; 60 Ark. 425; 59 Ark. 580, 614. The transaction should be set aside for inadequacy of price. 32 Ark. 251; 55 Ark. 579; 60 Ark. 425; 59 Ark. 581, 624; 64 Ark. 415.

BUNN, C. J. At the October term, 1896, the plaintiffs, Wolf & Bro., a mercantile firm doing business in the city of Little Rock, filed a creditors' bill in the Union circuit court in chancery against

the Erwin & Wood Co., C. M. Cook, trustee, and W. T. and J. M. Parnell as garnishees. Subsequently E. W. Albie, intervener in certain prior attachment suits, was made defendant also. The defendants filed their answers, taking issue on all the controverted allegations of the bill. We gather, from statement of counsel in the case, that the only ground for the attachment upon which the bill is based was that the defendant company was a foreign corporation and a non-resident of the state; and such, as we understand it, was the only ground for previous attachments, which had been dismissed on compromise sometime before the later attachments were sued out, as will appear further on.

Having established a sawmill plant at Norphlet, in Union county of this state, the Erwin & Wood Co. on the 18th of June, 1894, borrowed of E. W. Albie the sum of $5,000, for which it gave him its notes, due in twelve months thereafter, and secured the same by its mortgage of even date on all its property in that vicinity situated. The company was then and still is a corporation organized under the laws of the state of Iowa, with its principal office at the city of Dubuque in that state, and doing business at the time at Norphlet as aforesaid.

Albie was then the vice president of the company, and afterwards became its treasurer, as he is still, so far as the record shows. The money thus borrowed was for the purpose of buying iron rails to be laid on the company's tramways from the mill at Norphlet, and was so used, according to the testimony of N. P. Wood, one of the plaintiffs, who had been secretary part of the time, and all the time an employee of the company from the beginning. Wood also testified that the company had borrowed other money in 1895 from Albie, and from the First National Bank of Dubuque, giving a note therefor with Albie as surety. Witness does not state the amount of these loans, or whether Albie paid the surety debt. In other respects, his testimony is in corroboration of Albie and other witnesses connected with the business of the company.

The mortgage is, in a general and indefinite way, alleged to have been a fraud upon the rights of the plaintiffs, whose claims, however, did not exist prior to September, 1895, about fifteen months after its execution.

There can scarcely be any question as to the *bona fides* of the debt secured by this mortgage; nor is there any contention that it was executed without authority. It is contended, however, that the property, or portions of it—part of the lumber—was disposed of

by the mortgagor company, which was permitted to remain in possession and dispose of the lumber, but required to replace the same by lumber there to be manufactured, and that the proceeds of this lumber were not appropriated to the mortgage debt due in June, 1895, as aforesaid. There is meager testimony as to the facts, but on the face of the mortgage the provision referred to above appeared, and this, under the rulings of this court in *Fink* v. *Ehrman,* 44 Ark. 310, and *Gans* v. *Doyle,* 46 Ark. 122, made the mortgage technically void, but only *pro tanto;* that is, as to the property permitted to be disposed of in this way by its terms. The mortgage is valid in other respects, as the same lumber and that substituted for it is embraced in the later deed of trust. Attachment as to that is not available.

The lumber included in the mortgage and that substituted for it was included in the deed of trust dated February 28, 1896. In the latter part of January, 1896, the plaintiffs, or most of them, sued the company on their several debts against it in justice of the peace courts in El Dorado township of Union county, and at the same time sued out the several writs of attachment, on the ground that defendant company was a non-resident. In commencing its business at Norphlet, the company had appointed, under the requirements of the statute of the state, one H. P. Graham as its agent at Norphlet upon whom service of legal process might be made. Early in the month of February, 1896, while these suits in attachment were pending at various stages, the company dispatched their attorney, one Dohs, to Norphlet, to undertake some kind of settlement in the matter. After much negotiation between Dohs and the attorneys for the plaintiffs, acting for their respective clients, an agreement was finally reached, by which the company agreed to pay one-half of the several claims of plaintiffs and the costs of the attachments in cash, and to give its promissory notes, due in ninety days, for the other half of the plaintiffs' several claims. This agreement was carried out, the half of the claims was paid in cash, the costs were paid, and the notes for the other half of the several debts were given, and the pending attachment suits were dismissed as agreed. About the time of the pendency of this settlement, or soon afterwards—the exact time does not appear—the company at Dubuque undertook to make provision for meeting the cash part of the settlement thus made, and for that purpose had to effect a loan of that much, and finally Albie was induced to make it an additional loan of $2,000 for that purpose,

on condition that the company would secure him not only for that sum, but for all his unsecured and partially secured claims against the company, which at that time amounted to $7,500, by a deed of trust on all its property at Norphlet. This was in addition to the sum secured by the first mortgage, and named therein, and the deed of trust was not to affect that mortgage in any wise. The debt thus to be secured amounted in the aggregate to the sum of $9,500, which was then embraced in two promissory notes, one for $5,000 and the other for $4,500, and the deed of trust of even date therewith was executed according to the agreement between them, and placed on record in the recorder's office of Union county, Arkansas, on March 10, 1896.

Upon the non-payment and protest of the notes given in the settlement as aforesaid when they fell due, the attachment suits upon which the bill in this case is based were instituted, and levies caused to be made upon all the personal property of the defendant company at Norphlet, consisting of a large quantity of manufactured lumber, the commissary, etc., and writs of garnishment were served upon W. T. Parnell and J. M. Parnell, purchasers on a credit of about twenty head of cattle belonging to the mill of the company. Most of these suits were in justice of the peace courts, and one of these was prosecuted to judgment (and by agreement of record all the others were to abide the determination of this one), an appeal was taken to the circuit court by the defendant company, the trustee in the deed of trust, C. M. Cook, who had been properly substituted for Graham, who had declined to act (said Cook as such trustee having all the property in posseession at the time of the service of the writs of attachment), and Albie, the intervener, who claimed the property embraced in the deed of trust. The other suits were instituted originally in said circuit court, and were then pending, and were embraced in the agreement aforesaid. All these suits were consolidated when the appeals were perfected, and in the meantime the creditors' bill, in which all the plaintiffs joined, was filed, and the cause transferred to the equity docket.

The trustee, Cook, answered the bill, setting up his possession of the property at and before the attachments were levied, and from the time of the execution of the deed of trust through his predecessor Graham, and that he had disposed of none of the property except to pay off laborers' and other liens thereon, and claiming his right to possess and control the same as such trustee. Albie, the intervener, also answered, claiming the property under the deed

of trust, and that his debt was just and unpaid, and also denying the fraud alleged in the bill.

Upon the hearing the chancellor found that the mortgage and deed of trust were made matters of record soon after the respective dates of their execution, that the debts secured by both were *bona fide* and just; that the attachment and judgments were void for want of proper service upon the defendant company; that the absence of pleadings, except in the case of Wolf & Bro., was occasioned by the agreement aforesaid that the others should abide this suit's determination, and should not therefore prejudice the parties; and generally he found all the essential facts for the defendants, the trustee and intervener, and entered his decree for the plaintiffs as to their debts against the defendant company, and for the trustee for the possession of the property, and for the intervener according to the terms of the deed of trust, and ordered the garnishees to pay to the trustee the amounts they respectively owed and had admitted in the pleadings; and plaintiffs appealed.

It is contended by the plaintiffs that the board of directors of the company did not authorize the execution of the deed of trust of the 28th of February, 1896. It appears in testimony that some days before the execution of the deed of trust the directors, on the call of Bronson, the president, all met at his office in Dubuque, to consider the financial affairs of the company, and especially the condition of its affairs at Norphlet, and finally they unanimously agreed that, in order to meet its pressing obligations, as before stated, it was necessary to borrow the sum of $2,000, and for that purpose should execute a mortgage on the property of the company. It was also asecrtained that Albie would make the loan on the condition heretofore stated. No minute of the meeting was made. A few days elapsed, and another meeting was had, all being present except Bronson, the president, and at this meeting it was resolved and ordered that a deed of trust and notes be executed by the president to Albie as before agreed upon, and the minutes of this meeting were properly made in the directors' books. Immediately afterwards the deed of trust was executed by Bronson, the president, as directed, and the same was put on record as stated.

It was held by this court, in effect, in *Simon* v. *Sevier Association,* 54 Ark. 58, that the stockholders of a corporation, and others interested, are entitled to the advice and counsel of all the directors in all matters of business action by the board of directors, as well as to the benefit of all their votes; that when the time of the meet-

ing is fixed by law or the by-laws, no further notice is required; that when proper notice of a special or call meeting has been given to all, a majority present constitutes a quorum, and may lawfully transact business, but that when no notice is given to all, then the acts of those present are void and not binding. All being present and participating, of course, obviates the necessity of previous notice.

The sole object of the notice to the directors is that each one should have an opportunity of being present and participating in the meeting and its proceedings. In the present case, the whole purpose of the law was as fully and fairly accomplished as if the notice had been regularly given, or all had been present at both the meetings, delaying after the first meeting for the purpose of ascertaining the exact amounts, etc. As we infer, the second meeting was had, and the deed of trust ordered to be executed, according to their former agreement. This was done by the president, as before stated, and he was the only one absent at the last meeting. This, we think, was a substantial compliance with the requirements of the law, under the particular circumstances of the case, and this was sufficient authority for the execution of the deed of trust.

There is no sufficient proof that the company at the time of making the deed of trust was insolvent. Attachment is a harsh remedy, and all the facts to sustain the affidavit for the issuance of the writ should be definitely shown in testimony, and not be left to mere suspicion or conjecture. The solvency or insolvency of a corporation or other business concern can ordinarily be shown with more or less definiteness or certainty by proof of its assets and their value and amount of its liabilities and attendant circumstances. In this case, it is contended by plaintiff that the company was at the time insolvent, and had shut down its mills and ceased to do business. On the other hand, the defendants contend that the company had sufficient assets to pay all its debts, and that, while its mill was shut down for the time being, that was owing to an unusual stringency in the lumber market which prevented it from disposing of the same except at a great sacrifice, and, as it had a large amount on hand, it thought best to suspend the further manufacture of lumber until the market should become satisfactory, and then it was its intention to resume. Such is the theory they claim to have been acting under, as we understand the testimony. Whether this was true or false, we, of course, cannot say.

It might be that such was the intention when the deed of trust was executed, and the effort to revive was subsequently rendered ineffective by the harassment of this attachment litigation. As to this we can not say. We do not think, at all events, that insolvency was sufficiently shown, and, that being true, the question as to the right of a corporation to prefer one of its directors and officers as a creditor, as was done in regard to Albie in the making of this deed of trust, does not arise, as the question could only arise when the debtor corporation is insolvent, and shown to be so.

The chancellor's opinion fully covers all the other questions raised, and we think his findings are sustained by the evidence, and can not be disturbed.

The decree is, therefore, in all things affirmed.