STIEWEL v. WEBB PRESS COMPANY.

Opinion delivered May 14, 1906.

1.  CORPORATION—DIRECTORS' MEETING—VALIDITY.—As the rule that corporate acts required to be done or authorized by the directors must be at a meeting at which all are present or have an opportunity to be present is for the protection of the stockholders, acts done by three of the directors of a corporation at a time when the fourth director was absent and not notified of the meeting is binding on the corporation if the three directors held all of the stock of the corporation save a merely nominal interest held by the fourth director. (Page 51.)

2. EQUITY—ENFORCEMENT OF CONTRACT.—Under the maxim that "equity treats that as done which ought to be done," where a corporation accepted and retained the benefits of a contract which called for the execution of a mortgage and notes, but the mortgage and notes which were executed in pursuance of the contract were invalid for informality, equity will require the corporation to execute the mortgage and notes in a proper manner. (Page 52.)

Appeal from Pulaski Chancery Court; *Jesse C. Hart,* Chancellor; affirmed.

### STATEMENT BY THE COURT.

This is a suit in equity to dissolve a domestic corporation, the El Dorado Compress Company, having its principal place of business at the city of Little Rock in Pulaski County, and to dispose of its assets and distribute the proceeds among its creditors and shareholders.

The suit was originally instituted by a receiver appointed by the Pulaski Chancery Court to take charge of the assets of the Bank of Little Rock, that concern being a creditor and the holder of shares of the capital stock of the compress company, but during the progress of the suit appellant, Abe Stiewel, was substituted as plaintiff, he having succeeded to the rights of the bank. It is alleged that the compress company is insolvent, and no longer performing its corporate functions.

Appellees, Webb Press Company, Limited, of Minden, Louisiana, a foreign corporation, and R. L. Floyd, as trustee, were also made defendants, to prevent by injunction the foreclosure of a deed of trust, with power of sale, executed by the compress company upon its compress plant at El Dorado, Arkansas, to secure a debt of $15,000 due to the press company. It is alleged in the complaint that said trustee was about to sell said property, under the power contained in the deed, at public outcry in El Dorado, and that a sale for cash on short notice at that place would result in a sacrifice of the property. A writ of temporary injunction was issued, as prayed, preventing the sale by the trustee, and a receiver was appointed by the court to take charge of and protect the property pending the suit. Subsequently the property was sold under order of the court, and the proceeds of sale were ordered to be paid into court.

The press company filed its answer and cross-complaint, setting forth the contracts and trust deed executed by the com-

press company, and asking that its lien thereunder be foreclosed. The plaintiff, by answer to the cross-complaint, attacked the validity of the trust deed on the alleged ground that said deed had been executed by the president and secretary of the compress company without authority from the board of directors, one of the directors not having been present at nor received notice of the meeting at which the pretended authority was voted.

The facts established by the pleadings and proof are as follows:

On May 28, 1902, the El Dorado Compress Company was incorporated by E. H. Lake, J. S. Alphin, E. H. Smith and C. T. Walker; the capital stock specified in the articles of incorporation being 1600 shares of $25 each, subscribed, 780 shares by Lake, 580 shares by Alphin, 200 shares by Smith, and 40 shares by Walker. The four shareholders were named in the articles of incorporation as directors. Walker was named as stockholder and director only for the purpose of completing the organization. No stock was ever in fact issued to him, nor did he ever pay anything. He never in fact acted as director, never attended a meeting of directors, or was notified of such meeting, or was consulted about the business of the corporation. He was cashier of the Bank of Little Rock.

On June 7, 1902, a written contract was entered into between the compress company and the press company, whereby the latter agreed to furnish and erect for the former at El Dorado, not later than September 1 of that year, a press of the kind and quality described, for the sum and price of $21,000, to be paid by the compress company in three installments of $2,000 each ending when the press should be ready for operation, and the remainder of $15,000 in six equal installments.

The contract contained the following stipulation with reference to these payments:

"Six notes are to be given for these six time payments, falling due respectively on the dates above mentioned, all said notes to bear interest at the rate of 6 per cent. per annum from September 1, 1902, and all accrued interest to be paid annually on May 1. Said notes to be secured by deed of trust to the entire compress plant in which this compress is to be erected, and are to be the first claim against said plant. Said notes are to be further

secured by first insurance policies taken in standard companies and written 'Loss, if any, payable to the Webb Press Company, limited, as its interest may appear.' During the first thirty days after this press is erected, it is to be tested, and, if found to meet the guaranty herein given, it is to be at once accepted by the party of the second part, and the said six first-mortgage notes and the deed of trust securing same are to be at once properly executed and delivered to the party of the first part by the party of the second part."

Pursuant to this contract the press company delivered and erected the press, the payment of $6,000 was made, and the notes for $15,000 and trust deed or mortgage were duly executed on October 20, 1902, by the president and secretary of the compress company. A resolution of the board of directors authorizing the execution of the notes and deed of trust by the president and secretary was adopted at an informal meeting of the directors attended by Lake, Alphin and Smith, but Walker was not notified thereof, and did not attend.

On final hearing of the case the chancellor rendered a decree in favor of the press company, declaring a superior lien in its favor for the amount of its debt, and ordering the same to be paid out of the proceeds of sale of the property.

The plaintiff appealed.

*J. M. Moore, W. B. Smith* and *J. M. Moore, Jr.,* for appellant.

1. If it is assumed that Walker was not a stockholder, yet until the first annual election of directors he was eligible, since it is the rule under statutes like ours that directors selected at the organization are not required to be stockholders. Assuming that one can be a subscriber in the articles of incorporation without being a stockholder, he may still be a director and hold over until the regular annual election, and it is not material whether he takes his stock out or not. 2 N. E. 892; 163 N. Y. 425; 47 Ark. 269, 281; 33 Atl. 480. But Walker, having permitted his name to appear in the articles as a subscriber, and signed the same, became a stockholder. 54 Ia. 424; 67 N. Y. 249. 1 Cook on Corp. 161; 77 Md. 341; 1 Morawetz on Corp. § 56. If he was not a stockholder, still he was a *de facto* director. 2 Cook

on Corp. 1479, 1480; *Ib.* 1196; 12 N. H. 205; 25 Wis. 447; 25 Mich. 449; 4 N. Y. Supp. 174; 8 Am. & Eng. Enc. Law, 823; 49 Ark. 442. No act binding upon a corporation can be done by the directors at a special meeting of which one of the directors had no notice, and therefore no opportunity to be present; and a corporate mortgage or deed of trust can only be authorized by a resolution where all the directors are present, or where all were notified, and a majority are present. 55 Ark. 473; 5 Thompson on Corp. § 6176; 54 Ark. 58; 16 Kan. 309; 26 Am. Dec. 75; 52 N. J. Eq. 78-82; 21 Am. & Eng. Enc. Law, 867 and note 5.

2. The corporation, under the circumstances of this case, is not estopped to deny the validity of the mortgage. It was an unauthorized act on the part of three directors, and there was none of the elements of ratification existing in this case. 26 Am. Dec. 75, 77.

3. If, as between the stockholders and appellee, the latter would be entitled to reformation for the purpose of establishing a lien by the action of the court, still, since the rights of creditors have supervened, the right of reformation does not exist as against them.

4. Appellee, having elected to dispense with the property and proceed to a foreclosure and sale to make the purchase price, can not afterwards change its attitude and insist upon retaking the property, dispensing with the purchase price. A person can not ratify and then repudiate the same transaction. 53 Ark. 515; 57 Ark. 632; 135 Mass. 172; 48 Ark. 160.

*Ratcliffe & Fletcher,* for appellee.

1. Since Walker had no interest in the company or duties to perform in reference to its affairs, and did not regard himself as a director, and since Lake, Alphin and Smith, the only stockholders, did not consider him a factor in the company, neither he nor they can complain that he was not notified, and was not present. The reasons for the rule requiring notice to every director is in this case inapplicable. See 54 Ark. 58; 62 Ark. 20; 67 Ark. 542; 71 Ark. 438; 57 Fed. 821; 91 Fed. 630.

2. The contract of Lake on behalf of the compress company with appellee was valid and binding, the latter was permitted to carry out its part of the contract, and the compress company accepted the benefits of it, and made the cash payment.

79—4

The receiver, stockholders and creditors are estopped to assert that, because Walker was not notified to take part in the meeting of directors to authorize the execution of the mortgage pursuant to the contract, the mortgage was without authority. 73 Fed. 951; 10 Wall. 604; 51 Fed. 1; 36 Ark. 577; 47 Ark. 270; 32 Ark. 346; 48 Ark. 254; 68 Ark. 306; 63 Ark. 268; 96 U. S. 258; 11 Wall. 459; 5 Thompson on Corp. § § 6159-6160; 121 Fed. 343. The corporation and all its directors are charged with notice of the contract and mortgage, and of the acts of Lake and Smith. 110 U. S. 7; 75 Fed. 769; 38 Ark. 17; 86 N. Y. 200. Neither the compress company, its receiver nor its creditors can accept the benefits of the contract and at the same time reject its provisions. 30 Ark. 453; 91 N. W. 376; 65 Ark. 383; 56 Ark. 464; 131 U. S. 371; 40 N. Y. 200; 67 Ark. 542.

3. If no mortgage had been executed or signed, still, since the compress had accepted the benefits under the contract and had made the cash payments, and it only remained to execute the mortgage in accordance with the contract, equity will treat that as done which ought to have been done, and hold the appellee to be an equitable mortgagee, and enforce the contract as an equitable mortgage. 33 Ark. 237; 37 Ark. 511; 163 N. Y. 425; 7 Hun, 488; 51 Hun, 164; 43 N. Y. 34; 61 Ark. 271; 26 Ark. 72; 30 Ark. 120; Ib. 56; 60 Ark. 595; 144 N. Y. 112; 43 Ark. 464; 60 Ind. 64.

4. The doctrine of election does not apply. Appellee had the right to treat the mortgage as valid. If in this it was mistaken, it has neither waived nor surrendered any of its rights. 56 Ark. 461; 55 Ark. 146; 67 Ark. 206; 48 Ark. 160.

McCULLOCH, J., (after stating the facts.) 1. Waiving the question of Walker's eligibility as a director, and treating him as a *de facto* officer of the corporation, did the failure to notify him of the meeting or to consult him about the execution of the mortgage invalidate its execution?

It is undisputed that Walker was a shareholder and director in name only. He had no interest in the corporation, did not claim any, and did not assume to act as director. He testified that he took no part in the management of the affairs of the concern, and knew that they were looked after by Lake and the other parties interested.

It is well settled that corporate acts required to be done or authorized by the directors must be at a meeting at which all are present or have an opportunity to be present. The separate, individual approval of the directors will not suffice. This court, in discussing the reasons of this requirement, said in *Estes* v. *German National Bank,* 62 Ark. 20: "The object of this rule is the benefit and protection of the shareholders of the corporation. The duties of the board are imposed upon more than one member in order that they may be discharged with that wisdom derived from a conference discussion, and a comparing of views upon business affairs; and for this purpose they are required to meet and take counsel of each other. As all this is for the benefit of the shareholders, who constitute the corporation, they may waive the necessity of the meeting of the board for the transaction of the business within their corporate powers. They can do so by permitting the directors to establish a habit or usage of assenting separately to the making and performance of contracts by their agents. By permitting such usages or habits to be formed by a long course of business, they adopt and become bound by them, so long as they acquiesce. If this were not so, great injustice might be done to parties contracting with them in their usual way."

In *Texarkana & Ft. Smith Ry. Co.* v. *Bemis,* 67 Ark. 542, it was held that where the president had been in the habit of executing promissory notes in the name of the corporation without express authority of the board of directors, of which custom the board was cognizant, the corporation would be bound by a note so signed, the same as though express power had been conferred. The court there said: "The board of directors must be held, under the circumstances, to have acquiesced, and the corporation was bound for the same, as though the board of directors had, by formal action, conferred upon the president express authority to make the note."

In *G. V. B. Mining Co.* v. *First Nat. Bank,* 95 Fed. 23, the Circuit Court of Appeals for the Ninth Circuit, said: "Where the president of a corporation is given full power and authority to conduct and manage the business, and deal with the property and affairs of the corporation in such a manner, and for such a length of time, as to justify others with whom he transacts busi-

ness in believing that he had authority to do the acts in the manner and in the way performed by him, the people with whom he transacts business have the right to deal with him upon the assumption that he has such authority; and the corporation, having knowledge of the exercise of such acts, and of the manner in which the corporate business was transacted, can not thereafter, to the injury and prejudice of such parties, deny his authority or disaffirm or set aside his acts. See also *Fifth Ward Bank* v. *First Nat. Bank,* 48 N. J. L. 513; *Topeka Primary Association, etc.,* v. *Martin,* 39 Kan. 750.

The case at bar lacks the element of long acquiescence by the corporation in the acts of the board of directors without consulting Walker, but the principle is the same where all the real parties in interest had knowledge of such acts and consented thereto. The only persons interested in the corporation were Lake, Alphin and Smith and they were present at the meeting and authorized the execution of the notes and mortgage. Walker knew that the other three directors were managing the affairs of the corporation without consulting him, and he made no objection.

The rule requiring that all the directors should have an opportunity to participate in the transactions of the corporation, being for the benefit of the shareholders, there was no one else to complain, as Walker had no real interest to protect.

2. The superior lien of the press company must be upheld upon still another ground. The contract calls for a mortgage to secure payment of the notes, the corporation accepted and retained the benefits of the contract, and equity would, under the familiar maxim that "equity treats that as done which ought to have been done," require performance of that part of the contract if the officers had not already executed the mortgage and notes. *Lowe* v. *Walker,* 77 Ark. 103; *Block* v. *Smith,* 61 Ark. 266.

The decree of the chancellor was right, and must be affirmed. It is so ordered.