RIVES v. McGAUGHEY.

4-7977                                                            197 S. W. 2d 49

Opinion delivered November 11, 1946.

*Rowell, Rowell & Dickey,* for appellant.

*Virgil R. Moncrief* and *John Moncrief,* for appellee.

Robins, J. Appellants, two members of Green River Club, a fishing and hunting club, brought this suit on September 22, 1944, in the lower court, asking for cancellation of a deed executed on September 18, 1940, by appellee, J. W. Holt, as president, and H. A. McMillan, deceased, as secretary, of said organization, by which deed the club conveyed to appellee, H. C. McGaughey, approximately one hundred acres in Arkansas county. An accounting of club funds was also asked by appellants.

During the trial the lower court directed that certain funds, conceded by all concerned to belong to the club, but deposited in the personal bank account of one of the officers, be transferred and deposited in the name of the club. This direction apparently was agreed to, and the request for accounting was not further pressed below; and no contention on this phase of the case is made by appellants here. The lower court found that the deed complained of by appellants was valid, and from a decree refusing cancellation thereof this appeal is prosecuted.

Green River Club was organized as a benevolent or non-profit corporation pursuant to the provisions of §§ 2252 to 2261, inclusive, of Pope's Digest. It has a membership of approximately fifteen. Its constitution provides for the election of a president, vice-president, secretary and treasurer and three trustees. There is no specific provision in the constitution or by-laws as to purchase or conveyance of property, but it is set forth in § 4 of Article II of the by-laws that: "The three trustees shall have charge of the management and operation of said club and its grounds."

Appellants alleged in their complaint that the president and secretary of the club executed the deed to appellee, McGaughey, without the knowledge of appellants, "without authority from the membership of the club and contrary to law," and contrary to the constitution, by-laws and regulations of the club.

The material allegations of the complaint were denied in a separate answer filed by appellee, H. C. McGaughey.

The deed involved herein was in regular form. recited a consideration of $600, paid by execution of three promissory notes, each for $200, and one due on the first day of October during each of the years 1940, 1941, and 1942. As a further consideration, it was stipulated in the deed that appellee, McGaughey, should construct a dam, 20 feet at the base and 12 feet at the top, with spillways, on a twenty-acre tract owned by appellee, McGaughey, which appellee conveyed to the club as additional consideration for the deed obtained by him. The clubhouse tract of twenty acres was not included in the conveyance to appellee, so that the clubhouse property, after the trade, consisted of two twenty-acre tracts, the building being located on one tract and the lake on the other. The deed to appellee also contained a requirement that he should stock the lake to be thus created with bass, crappie and bream, and that "the said H. C. McGaughey will maintain the clubhouse, and a right of way thereto over his property, of the grantor herein,

. . . said maintenance to continue as long as the clubhouse is used by the Green River Club." This deed concludes:

"In witness whereof, the said Green River Club by resolution of its board of directors have caused its president and secretary to execute this deed and to subscribe its name and their names in their respective capacities and affix its seal thereto, this the 18th day of September, 1940.

"GREEN RIVER CLUB, A CORPORATION,

"By J. W. Holt, President,

"H. A. McMillan, Secretary.

"SEAL OF GREEN RIVER CLUB."

Appended to the instrument is an acknowledgment in proper form for a corporate deed.

To maintain the issues in their behalf appellants introduced eight witnesses (including themselves) all of whom testified that they were members of the club, that the conveyance to McGaughey was never discussed in any meeting of club members attended by them, and that they had never authorized the transaction. Some of these witnesses, however, admitted that in 1943 they learned about the construction of the fish pond for the club on the twenty acres obtained from McGaughey.

No minutes of meeting of the club members or of the meetings of the trustees, were introduced in evidence, and it appeared that such minutes were not regularly kept. No authentic list of members of the organization was in existence.

It was not denied that appellee, McGaughey, had paid the entire amount (less certain credits for work) he agreed to pay for the land purchased by him or that he had constructed the dam on the twenty-acre tract, which he conveyed to the club as part of the consideration of the deed to him.

Five witnesses, all members of the club, testified on behalf of appellees. Two of these witnesses were trustees of the club at the time the deed to appellee, McGaughey, was executed, the other trustee having died before the suit was brought. One of the witnesses for appellees was the widow of the deceased trustee, who seemed to have had the privileges of her husband's membership. She testified that her husband was trustee when the trade with appellee, McGaughey, was made, and that, although she did not know about the trade at the time, she now approved of it. The substance of the testimony of appellees' other witnesses was that the club had no place for fishing and no proper location on which a lake could be constructed and for this reason the trustees were authorized to make the trade by which they sold McGaughey, who was a member as well as caretaker, the one hundred acres, and obtained from him the twenty-acre tract, which, being traversed by a ravine that could be dammed up, was a suitable site for an artificial lake. These witnesses also testified that the transaction was properly authorized by all of the trustees and was sanctioned by a meeting of the club members. They were not explicit as to the date of this meeting, nor as to who or how many of the members were present, and, as stated above, no proper minutes or records of the affairs of the organization were made or preserved.

There was no evidence tending to show any dishonesty or fraud on the part of the officers who executed on behalf of the club the deed assailed herein, and it was not shown that the trade was an improvident or disadvantageous one as far as the club was concerned. On the contrary, there was testimony indicating that the trade was beneficial to the club. Nor can the transaction be condemned as such a sale of all of the assets of the club as to require its liquidation, thus causing a diversion of trust property from use to which it was dedicated.

The sole ground on which cancellation of this deed is asked is that the same was not authorized by the club's members.

The affairs of this organization, under its by-laws, were to be conducted by its trustees, no provision being made in its constitution or by-laws for a board of directors, and these trustees therefore had the powers usually vested in directors of a business corporation.

Ordinarily, in the absence of a charter or statutory limitation on its authority (except in case of a sale of all assets), the board of directors of a corporation has the power, when acting in good faith, to authorize the sale and conveyance of the real estate of the corporation. "While a charter or statutory provision as to which officers have power to convey is of course binding, in the absence of any charter or statutory limitation, the board of directors has full power to convey the corporate realty and may authorize the officers to execute a conveyance thereof or make a contract for its sale." 13 Am. Jur. 900; 19 C. J. S., p. 136, § 774.

In Thompson on Corporations, Third Ed., vol. 2, p. 589, it is said: "The governing body of corporations having a capital stock, and generally in business and social organizations, is styled 'directors' or 'board of directors.' The term 'trustees' is usually employed to designate the governing body in eleemosynary corporations, and in institutions and associations whose membership is in a sense general and unlimited, and where the body of trustees practically constitute or compose the corporation. It is a rule of law now generally recognized that the corporate powers, business and property of a corporation must be exercised, conducted and controlled by such managing body. . . . A corporation acts only through its managing officers or agents."

The deed involved in this case contained a recital that its execution was duly authorized, it was signed by the president and secretary of the club and it bore the seal of the club. Under these circumstances there was a presumption that these officers were authorized to execute the instrument. *Sibly* v. *England*, 90 Ark. 420, 119 S. W. 820; *Fidelity & Deposit Company of Maryland* v. *Rieff*, 181 Ark. 798, 27 S. W. 2d 1008; *Oliver* v. *Henry*

*Quellmalz Lumber & Manufacturing Company,* 170 Ark.
1029, 282 S. W. 355; 19 C. J. S. 662. Furthermore, there
was substantial testimony to the effect that the execu-
tion of the deed had been duly authorized by the trus-
tees. While action of this kind by directors or trustees
of a corporation should always be evidenced by a writ-
ten record thereof, the absence of such a record is not
necessarily fatal to the validity of the act authorized
at the meeting. ''The fact that no minute of the meet-
ing was made or recorded will not render invalid any
act done or authorized at such meeting which is within
its corporate powers. Such authority may be made ver-
bally, and proved by parol evidence. *Wolfe* v. *Irwin &
Ward Company,* 71 Ark. 438, 75 S. W. 722; *Stiewel* v.
*Webb Press Company,* 79 Ark. 45, 94 S. W. 915, 116 Am.
St. Rep. 62; 10 Cyc. 1001.'' *Merchants & Farmers Bank*
v. *Harris Lumber Company,* 103 Ark. 283, 146 S. W. 508,
Ann. Cas. 1914B, 713.

To establish the invalidity of this deed appellants
offered testimony, the effect of which was to establish
only that a majority of the members of the club did not
know of or authorize the conveyance. Such evidence was
not enough to overturn the *prima facie* validity of the
deed, or to show that it was not made in pursuance of
authority of the trustees, who, in the absence of fraud,
were empowered to sell the property and direct its con-
veyance. This conclusion renders it unnecessary to
consider the effect of the failure of appellants to join
the club as a party and to offer restoration of the con-
sideration obtained by the club from appellee, Mc-
Gaughey, for the execution of the deed questioned in this
suit.

The decree of the lower court was therefore correct
and is affirmed.