## CRYMBLE ET AL. v. MULVANEY.

| | |
|---|---|
| 21 | 203 |
| d10a | 505 |

| | |
|---|---|
| 21 | 203 |
| 28 | 467 |

| | |
|---|---|
| 21 | 203 |
| d30 | 154 |
| d30 | 162 |

| | |
|---|---|
| 21 | 203 |
| d20a | 459 |

| | |
|---|---|
| 21 | 203 |
| 38 | 179 |

1. CORPORATIONS—CONTRACTS WITH DIRECTORS.

A director of a corporation cannot act in the capacity of buyer from the company and at the same time as its agent in making the sale. But when the company is represented in the transaction by its other directors, who constitute a majority of the board, and he does not assume to represent it, he is not disqualified from dealing with the corporation.

2. RATIFICATION.

A sale of corporate property having been made by a majority of the board to one of the directors, which was afterwards confirmed by the stockholders and board, its validity cannot be questioned by a mere stranger.

3. STATUTE OF FRAUDS—CHANGE OF POSSESSION.

The facts in this case show a sufficient compliance with the requirements of the statute of frauds with respect to the change of possession of chattels sold.

4. DAMAGES—LOSS OF PROFITS, ETC.

The loss of profits resulting from injury to business after resumption and until the commencement of the action, and the loss of credit occasioned by a wrongful seizure and retention of goods under a writ of attachment against the owner's vendor, are too remote and speculative to be considered in ascertaining damages resulting from the seizure.

5. EXEMPLARY DAMAGES.

To justify a recovery of exemplary damages, the act causing the injury must be done with an evil intent, and with the purpose of injuring the plaintiff, or with such a wanton and reckless disregard of his rights as evidence a wrongful motive.

### Appeal from the District Court of Chaffee County.

THIS is an action brought by the appellee to recover damages for the alleged unlawful taking of certain goods, wares and merchandise by the appellants. The nature of the case and the questions involved can be better understood by a brief statement of so much of the pleadings as present the material issue.

The complaint, *inter alia*, alleges, in substance, that appellee was, at the time of the grievance complained of, a merchant carrying on a wholesale and retail business; that on or about the 18th of December, 1890, The C. S. Morey Mercantile Company placed in the hands of the other appellant, as sheriff of the county of Chaffee, a pretended writ of attachment, purporting to have been sued out of the district court of Arapahoe county, in the state of Colorado, by the said C. S. Morey Mercantile Company, in a certain cause wherein it was plaintiff, and The Salida Mercantile Company was defendant; that said Crymble, as sheriff, at the request and by the direction of said company, executed the writ of attachment by levying upon and taking into his possession, and from the possession of appellee, his entire stock in trade, consisting of groceries, hardware, harness, farming implements, and other chattels; that in so taking into his possession the goods and chattels complained of, the said Crymble unlawfully broke into the appellee's store and place of business, and took complete possession thereof and excluded appellee therefrom, completely stopping his trade and business, preventing him from continuing his business for the period of twenty days, to the appellee's damage in the sum of $1,000; that on the 7th day of January, 1891, said Crymble returned to appellee a portion of the property so taken; that a part of

said property was of a perishable nature and had decayed and depreciated in value while unlawfully retained by said Crymble, to appellee's loss and damage in the sum of $200; that the market price of a portion of the goods so taken and held depreciated in value $300; that the value of the goods taken and retained was $7,000; that the taking of the property by said Crymble was attended with circumstances of malice and insult and by wanton disregard of appellee's rights and feelings; that at the time of said unlawful taking he was conducting a prosperous business and had large credit with wholesale and jobbing houses in Colorado, as well as with the citizens of Chaffee county; that by reason of the unlawful acts of appellants his trade and credit have been temporarily destroyed, and will be seriously injured for a long period in the future; and he has been financially cramped and distressed to his damage in the sum of $10,000; prays for judgment against appellant in the sum of $18,500, and for costs of suit.

The answer of appellants admits that said Crymble, as sheriff of Chaffee county, at the request and by the direction of said appellant, The C. S. Morey Mercantile Company, did execute the writ of attachment in said complaint mentioned, by levying upon and taking into his possession certain stock in trade, consisting of groceries, hardware, harness, wagons, farming implements and other chattels, but denies that said goods were taken from the possession of appellee; denies that Crymble, in the taking of the same into his possession, unlawfully broke into appellee's store or place of business; alleges that the writ of attachment was sued out of the district court of Arapahoe county on the 17th day of December, 1890, in a certain suit wherein The C. S. Morey Mercantile Company was plaintiff and The Salida Mercantile Company was defendant, to secure the payment of a certain indebtedness due from the said Salida Mercantile Company, which said indebtedness was for the sum of $1,520.67; that judgment was rendered in favor of said plaintiff for said sum and sustaining said attachment.

They further allege that The Salida Mercantile Company was the owner of, and in possession of, the goods, wares and merchandise taken by the said sheriff under said writ of attachment, but that intending to cheat, hinder and defraud The C. S. Morey Mercantile Company and the other creditors of said Salida Mercantile Company, and to put its effects out of the reach of said creditors, the said Salida Mercantile Company did fraudulently convey and assign its said goods, wares and merchandise to appellee; alleges that there was no immediate, or any, change of possession of the said goods from The Salida Mercantile Company to appellee; that when the writs of attachment were levied upon said goods and chattels they were in the possession of said Salida Mercantile Company; that the appellee, for a long time prior to the pretended sale by the Salida Mercantile Company to him, was the vice president and general manager of The Salida Mercantile Company; that he had sole supervision of the business of said company; that said pretended sale was made and conducted by said manager to himself individually, and was made by The Salida Mercantile Company and accepted by appellee with the intent to hinder, delay and defraud The C. S. Morey Mercantile Company and other creditors of said Salida Mercantile Company.

The cause was tried to a jury; verdict and judgment for $6,849. To reverse this judgment, defendants below bring the case here on appeal.

Messrs. O'DONNELL & DECKER, for appellants.

Mr. C. S. LIBBY, for appellee.

MR. JUSTICE GODDARD delivered the opinion of the court.

It will be seen from the foregoing statement that appellants attack the validity of the sale of the goods in question, by The Salida Mercantile Company to appellee, upon the ground both of fraud in fact and fraud in law. In support

of the first ground, while they do not question the adequacy of the consideration paid by appellee, or claim that he committed any fraud upon the company or its stockholders in purchasing the goods, they insist that by reason of his fiduciary relations to the company, being a director and its manager, he was disqualified from purchasing at all, since in doing so he would act in a double capacity, and his interest as buyer would conflict with his duty as a director.   It may be conceded that a director, under the principle that controls the law of agency, is incapacitated from acting in the capacity of buyer from the company, and at the same time as its agent in making the sale.   But it does not follow, as contended by counsel for appellants, that a director, in dealing with his company, necessarily acts in this double capacity. He certainly does not in case the company is represented in the transaction by its other directors, who constitute a majority of the board, and he does not assume to represent the company, but deals with such majority.   Under such circumstances, this principle of agency has no application, and he is not disqualified from dealing with the corporation when so represented by other agents.   Angell & Ames on Corp., secs. 233 and 312; Beach on Corp., vol. 1, sec. 242; Morawetz on Private Corp., vol. 1, secs. 521 and 527; *Harts v. Brown*, 77 Ill. 226; *Beach v. Miller*, 130 Ill. 162; *Buell v. Buckingham*, 16 Iowa, 284.

It appears from the evidence that The Salida Mercantile Company was a duly incorporated company, and carrying on a wholesale and retail mercantile business at the city of Salida, in Chaffee county, from January 1 to November 10, 1890.   Messrs. Motz, Johnson, Flynn, Mulvaney and Dodge were its stockholders, and also constituted its board of directors.   Up to October 14, 1890, Mulvaney was its president, when he resigned that office and was elected vice president and general manager.   At a meeting of the board of directors on November 2, 1890, he, as manager, was instructed to find a purchaser for the entire stock and business of the company; and if such a buyer could not be found, to use such

means in disposing of the stock as he deemed best for the interests of the company and its creditors. On November 16, with the assistance of Mr. Dodge, one of the directors, he sold the retail part of the business to Allbright & Hawkins, and upon the request of Dodge and Flynn, acting in behalf of the other directors and stockholders, he agreed to purchase the wholesale part of the business, at the invoice price of the goods, and in pursuance of this agreement gave his notes and acceptances to the company.

On November 16, at a meeting of the stockholders and board of directors, he made a report of these transactions, which report was " accepted as fully satisfactory to the stockholders and directors." Thus it will be seen that while the sale to Mulvaney was negotiated by Dodge and Flynn, that it was fully ratified and confirmed by the board of directors and stockholders of the company; and the objection that it was a sale by Mulvaney to himself is without foundation in fact. Nor do we think that the fact that Dodge, at the time of negotiating the sale, was also an agent of The Struby-Estabrook Company, another creditor of The Salida Mercantile Company, and was actuated by a desire to protect that particular creditor, in any way affects the validity of the transaction. And, furthermore, if for any of the reasons urged the validity of the sale might, as between Mulvaney and the company or its stockholders, be questioned, there being no actual fraud, it does not lie in the mouths of appellants to question its validity.

As was said by Judge Dillon, in the case of *Buell v. Buckingham, supra* :

" As the principal or parties interested may confirm the sale, a *mere stranger* cannot make the objection that the trustee was the purchaser, or that the sale was irregular. The remedy belongs only ' to persons who had an interest in the property before the sale, and no other person can apply to set aside the sale.' "

It is urged in support of the second objection to the validity of the sale that there was not such a delivery and change

of possession of the property as required by section 14 of our statute of frauds; that, under the circumstances of the case, Mulvaney, as general manager of the company, could not deliver the possession of the goods to himself as an individual. It is well settled by the decisions of this court that the acts necessary to constitute a sufficient delivery and change of possession of the subject of sale required by this section of our statute depend in a great measure upon the nature and situation of the property. As was said in *Cook v. Mann*, 6 Colo. 21:

" When the subject of the sale does not reasonably admit of an actual delivery, it is sufficient if the vendee assume that control and dominion of the property so as reasonably to indicate to all concerned the change of ownership. The case of goods in a warehouse, brick in a kiln, and lumber in a raft, are familiar illustrations where removal is not impossible, but unusual, and out of the regular course of trade.

"In such cases, if there is a full surrender upon the part of the vendor, and a full assumption on the part of the vendee, of the control and dominion of the subject of the sale, the delivery is sufficient."

It appears from the record in this case that The Salida Mercantile Company occupied a store on the corner of F and Second streets, where it carried on its retail business and kept its office, and used the warehouse at the corner of First and G streets for storage purposes, wherein it kept its wholesale stock. This building had no sign of The Salida Mercantile Company on it, and was only opened when goods were placed therein or taken therefrom. The retail stock sold to Allbright.& Hawkins was in the store on the corner of F and Second streets, and was taken possession of by them. The goods purchased by Mulvaney that were in the store at F and Second streets were removed by him to this warehouse. Upon consummating the sale, he took actual possession of the goods therein and opened up a wholesale and retail business in this latter place, and kept it open during business hours; had windows and a door cut in the corner and at the front

VOL. XXI—14

of the building, and placed the sign " Office " over the door
facing the street, and over the window; also put up a sign
" Harness Making & Repairing;" put an advertisement in
the newspaper that, as successor to The Salida Mercantile
Company, he was doing business at the corner of First and
G streets.

From the nature and situation of the goods, these facts
and circumstances are sufficient to sustain the finding of the
jury that there was a sufficient compliance with the require-
ments of the statute. We think, therefore, that the sale
was valid, and that the appellee, upon the testimony, was
entitled to recover the actual value of the goods taken and
retained, together with interest thereon, and damages for
the depreciation and loss of those taken and returned, and
perhaps for the loss of trade and business during the time
the sheriff held possession of the building and excluded
him therefrom,—such loss being the natural and proximate
result of that act,—if competent and satisfactory proof of
such loss can be made. Yet we are clearly of the opinion
that the court below erred in submitting to the jury the
question of the loss of profits thereafter, and of injury to the
credit of appellee; also in submitting to them the question
of exemplary damages. The loss of profits resulting from
an injury to the business after its resumption and until the
commencement of the action, and the loss of credit, are too
remote and speculative, and are not allowable under the
clear weight of authority. To justify a recovery of exem-
plary damages, the act causing the injury must be done with
an evil intent and with the purpose of injuring the plaintiff,
or with such a wanton and reckless disregard of his right as
evidences a wrongful motive. We find no testimony in the
record that tends to show such a motive or purpose on the
part of appellants, or any fact or circumstance attending
the taking of the goods from which a wrongful motive may
be inferred. The appellants questioned the validity of the
sale of the goods to appellee, and sought to subject them, as
the property of The Salida Mercantile Company, to the satis-

faction of a just claim held by The C. S. Morey Mercantile Company against it.    The case therefore involved a *bona fide* dispute as to the title of the goods, and the mere seizure of the same by appellants, under these circumstances, even if they knew "the facts concerning the sale to Mulvaney," would not constitute a reckless disregard of plaintiff's rights; and unless such seizure was attended by circumstances of aggravation, would not entitle appellee to recover exemplary damages.

As was said in the case of *White v. Webb*, 15 Conn. 302:

"In actions of trover and trespass, for property taken and converted by the defendant, where there is no malicious motive on the part of the defendant, but he takes the property under a claim of right, and the real dispute is as to the title, the rule of damages is the value of the property at the time of the conversion or taking, and interest on that sum to the time of judgment."

How far these objectionable elements of damage were considered by the jury, or entered into the amount of the verdict, we are unable to determine, and are therefore compelled to remand the cause for another trial.    This conclusion renders it unnecessary for us to notice the other errors assigned that question the correctness of the rulings of the court below in the admission and rejection of testimony. For the foregoing reasons the judgment is reversed and the cause remanded.

*Reversed and remanded.*