[No. 2431.]

## MOSHER ET AL. v. SINNOTT.

1. **Corporations—Directors—Sale of Corporate Assets—Fraud.**

Where the majority of the directors of a mining corporation, without the consent of the stockholders, sold to other directors treasury stock of the corporation in payment of debts due by the corporation to the purchasing directors, the sale was constructively fraudulent and voidable at the suit of the corporation or the stockholders, although the sale was for a fair price and without any actual fraud, and although the purchasing directors did not vote on the resolution authorizing the sale.

2. **Same—Equity—Pleading.**

Where a majority of the directors of a corporation issued to other directors treasury stock of the corporation in payment of bona fide debts owed by the corporation to the purchasing directors, in an action brought by stockholders of the corporation to cancel the certificates after the debts in payment of which the certificates were issued were barred by the statute of limitation, a complaint which failed to offer to do equity by making some provision for the debts was insufficient to sustain the action. And a decree cancelling the certificates without making some provision for the payment of the debts is bad, and will be re-
versed.

3. **Corporations—Sale of Stock Below Par.**

The board of directors of a corporation have power to sell full-paid treasury stock of the corporation below par for what they deem it to be worth.

4. **Mining Corporations—Powers of Directors—Lease.**

Where the certificate of incorporation of a mining company named as one of the purposes of the corporation the leasing of its property, and conferred upon the board of directors the management of its property, the board of directors had authority to give a lease on the mining property of the corporation without the consent of the stockholders:

*Appeal from the District Court of Lake County.*

Mr. CHARLES J. HUGHES, JR., Mr. CHARLES CAVENDER and Messrs. WALDRON & THOMPSON, for appellants.

Mr. WILLIAM J. HARRIS and Mr. JOHN A. EWING, for appellee.

GUNTER, J.

This was an action by a stockholder for herself and others similarly situated, against the corporation, its directors and appellant Root, to redress certain alleged corporate wrongs.

1. March 5, 1898, the capital stock of appellant corporation, a mining corporation under the laws of this state, consisted of one million two hundred and fifty thousand (1,250,000) shares, of which appellee held about 617,000—appellant directors held and represented about 213,000, and other stockholders about 22,000. The corporation had been organized January, 1896, and, in the following month, its capital stock had been full paid by the conveyance to it of certain mining interests. After the issuance of the capital stock, full paid, 399,000 shares thereof had been assigned to the corporation as treasury stock. The authorized board of directors consisted of five members. March 5, 1898, the board was com-

posed of appellant Mosher, Matheson, Strauss and Whipple, there being a vacancy caused by the death, in the prévious September, of John Sinnott, the father of appellee. March 5, 1898, appellant corporation was indebted to appellant Mosher in the sum of $291.10 upon an account for money theretofore paid out for it at its request; and to appellant Whipple in the sum of $57.30 upon an open account. The assets of the company consisted of certain mining claims, and the above treasury stock. It had no funds. The claims were not producing, nor had any valuable bodies of ore been exposed. The value of its assets was wholly speculative, no sale of the stock had been made except 7,500 shares to appellant Matheson for a suit of clothes, which stock was subsequently sold for $50.00. The stock had no market value upon March 5, 1898. The four directors composing the board met and ordered the issuance to Mosher of 58,220 shares of the treasury stock of the company in satisfaction of his above claim, and 11,460 shares to Whipple in satisfaction of his claim. Mosher did not vote on the resolution authorizing the issuance of the stock to Whipple, nor did Whipple vote on the resolution authorizing the issuance of the stock to Mosher. The stock was issued.

Appellee seeks to have the certificates so issued cancelled, charging actual and constructive fraud in their issuance.

There was no evidence to justify the conclusion that there was actual fraud in the issuance of this stock; as stated, the stock had no market value, its value was purely speculative, and the board seems to have obtained its reasonable value in selling to Mosher, Whipple and appellant Root at one-half cent a share. Later some of the stock was sold at a higher price, but, in the meantime, new conditions had arisen affecting favorably the value of the stock.

We think, however, there was constructive fraud in the sale of the stock to Whipple and Mosher by their codirectors. This stock was an asset of the corporation, and it was sold by its board of directors to two of the members thereof without the approval of the beneficiaries, the stockholders.

In *Morgan v. King*, 27 Colo. 539, 553, the board of directors consisted of thirteen members, a majority of whom constituted a quorum. Eleven met and sold to four of their number certain assets of the company, being stock held by it in another corporation. A stockholder in behalf of himself and other stockholders similarly situated brought an action to annul the sale, and for other relief. The court declined to entertain the good faith of the transaction as a defense, and set the sale aside upon the sole ground that it was constructively fraudulent in that the sale by the board to certain of its members of the corporation assets was a sale by the trustee to himself of trust property. Therein it is said:

"A careful examination and analysis of these cases make it clear that as to transactions of the character under consideration there has been no relaxation whatever of the rule prohibiting directors of corporations from purchasing trust property. In other words, not a single one of the cases relied upon support the proposition that the purchase by directors of their codirectors of property of the corporation which they represent has held that the legality of the transaction, when attacked by the corporation or a shareholder (and the directors are not the sole stockholders of the corporation), depends upon the good faith of the purchasers, or that they can be permitted to make a showing to that effect as a defense to an action based upon a constructive fraud."

The following citations are therein made approvingly:

"The directors of corporations are trustees and agents of the shareholders and of the corporation, and the same rules are applied to the contracts of directors with the corporation as are applied to the dealings of other parties holding a fiduciary relation to each other.  *  *  *  Contracts of trustees are of two classes. One class consists of contracts made by trustees with themselves or with a board of trustees or directors, of which they are members. These contracts are void from the fact that no man can contract with himself."—1 Perry on Trusts (4th ed.), § 207.

"The law is well settled that a director's purchase of property from a corporation is voidable at the option of the corporation, even though the directors paid fully as much as, or more than, the property is worth."—Cook on Stockholders, § 653.

The court also says in the course of its opinion:

"Applying these principles and reasons, it is clear that the purchase of the stock in question cannot be upheld, even though the defendants were able to show that the transaction was entirely free from fraud, was entered into in good faith by all concerned, and was, in fact, for the interest of the bank. The stock belonged to the bank; none of the shareholders, except the directors participating in the transaction, were consulted regarding its sale; part of the directors attempted to sell to others; and a stockholder attacks the validity of the contract thus made."

And in the ruling upon a petition for a rehearing, it is said:

"So far as the decision of the main question is concerned, i. e., the validity of the transaction, it is based entirely upon the proposition that the relation of these appellants to the bank was such, that the law

inhibited the purchase by them of the subject-matter in controversy."

This case is cited approvingly in *Glengary Consolidated Mining Company et al. v. Boehmer*, 28 Colo. 1, 3, and in *Fishel v. Goddard*, 30 Colo. 147, and in the former it is said:

"A trustee cannot deal with the trust estate in a matter where his interests would, or might, conflict with his duty to his *cestui que trust*. In all cases where, without the full knowledge and assent of the *cestui que trust*, he has assumed to act in the capacity of vendor and vendee, the *cestui que trust* may avoid the transaction at his election. No question of the fairness or unfairness of such a transaction can be considered under the state of facts existing in this case."

In *Fishel v. Goddard* a mortgage was given by the corporation to one of its directors to secure him on account of an endorsement of certain of his promissory notes. He took possession and sold the mortgaged property to another director. The action was in the nature of a creditor's bill against the director to hold him responsible for the direct profits accruing out of the transaction. The property was sold for less than its value. The court gave no consideration to the question of fraud in fact. The action was sustained. Therein the court said:

"The sale may have been regular in all respects, the mortgage entirely valid, but when he assumed to act for himself in purchasing the assets of the corporation, he was not thereby relieved of the responsibilities and duties which the law imposed upon him as a trustee. He could not abrogate his fiduciary character in this respect temporarily, in whole or in part, so as to relieve himself from the duties which he owed his principal."

*Crymble v. Mulvaney*, 21 Colo. 203, has been cited

as *contra* the conclusion we have reached. There a corporation questioned the validity of a sale by directors to one of their number. A sufficient reason for distinguishing that case from the one at bar is, that there the sale by the directors was approved by the beneficiaries, the stockholders.

*West v. Produce Company*, 6 Colo. App. 467, is also cited in support of the validity of the sale of stock to Mosher and Whipple. The only point actually decided in this case was, that an insolvent corporation might give its directors security on its assets. It does not assume to pass upon the question here before us. Appellee quotes from the opinion and relies upon the following:

"That the right to become a creditor carries with it all the rights of a creditor, and authorizes the corporation to prefer the officer if it sees fit."

In *Fishel v. Goddard, supra,* the supreme court characterizes this statement as *dicta* and says that had such a doctrine as is expressed in these words been necessarily included in the decision that it would not follow it.

We think the sale of the stock by the directors to appellants Mosher and Whipple constructively fraudulent and voidable at the instance of the corporation. This action, although brought by a stockholder, is really an action by the corporation to redress a corporate wrong, that is, to set aside the constructively fraudulent sale of this stock. In order to obtain this equitable relief the corporation must do equity. The complaint makes no offer to do equity with reference to Mosher and Whipple, nor does the decree make any provision for doing them equity. The decree simply provides for a cancellation of the certificates of stock held by them under this purchase. The claims of Mosher and Whipple against the corporation are not disputed, they are open accounts,

they accrued more than six years ago, and are therefore barred by the statute of limitations. Were we
to affirm the judgment of the lower court as to these
certificates of stock we would thereby cancel the certificates of stock and yet not put Mosher and Whipple
in the same position in which they were before they
received the certificates of stock, the corporation
would have back the stock and at the same time have
annulled perforce the statute of limitations the
claims of Mosher and Whipple against it. This
result would be manifestly unjust. The complaint
failed to state facts sufficient to constitute a cause of
action in that it failed to offer to do equity with reference to Whipple and Mosher. The decree was
bad in that it cancelled the certificates issued to
Whipple and Mosher without requiring the corporation to do equity with reference to their claims.

2. March 5, 1898, the board of directors gave
to appellant Root an option for one year on 329,320
shares of the above treasury stock of 399,000, at one-
half cent per share, and at the same time gave
him a lease on the mining property for five years.
This option was availed of in June, 1898, by
payment of the money due thereon to the company,
and by delivery of the stock to Root. This action
seeks to cancel this stock and the lease. Immediately
after the giving of the lease Root went into possession of the demised premises and spent about $42,-
000.00 in its development. He has realized from the
mine only about $200.00. His development work is
of permanent value to the property. The complaint
makes no offer to return the money paid by Root for
the stock, nor does the decree cancelling his certificate of stock and lease make any provision requiring appellant corporation to do equity before obtaining such relief.

There is an attempt to charge actual fraud on

the part of the directors and Root in this transaction. There is no evidence to sustain the charge. The evidence does not show that the stock was sold at an unfair price, nor that the lease was given on unfair terms. We think the evidence affirmatively shows that the stock was sold at a fair price, and the lease a reasonable one. Appellee, however, charges that the board of directors had no authority to sell the stock to Root at less than par, the par value being $1.00 per share, and the sale being made at one-half cent per share.

The stock was full-paid treasury stock, and being so the board had the power to sell it below par for what they deemed it to be worth.

"It is too clear to admit of question that when stock has been once issued and fully paid for, there is nothing to prevent the stockholders from returning a whole or a part thereof to the corporation, or to a trustee for its use, to be disposed of for its benefit; and in such a case the corporation or trustee may dispose of the stock at less than its par value without violating statutory or constitutional privileges regulating the issue of stock, and without rendering purchasers thereof liable to creditors beyond the price which they agree to pay."—Clark and Marshall on Corporations, vol. 2, p. 1261. (See, also, page 1213.)

The same authority, at page 1203 of the same volume, says:

"When stock is issued by a corporation for * * * property, a part of it is sometimes returned to the corporation as treasury stock, to be disposed of for the purpose of raising money to carry on its operations. Such stock need not be issued at par, but may be sold at the best price that can be obtained. * * * It holds such stock as it holds its other assets, and may lawfully sell the same at its market

price, even as against dissenting stockholders and subsequent creditors.''

See, also, *Mackey v. Burns,* 16 Colo. 6; *Speer et al. v. Bordeleau, ante,* p. 413, 79 Pac. 332.

It is said the board had no power to lease the property of the company without the consent of the stockholders.

We think both our statutes and the certificate of incorporation of appellant company expressly authorized the board of directors to make the lease in question.

''The stock, property and concerns of any company organized under the provisions of this act shall be managed by not less than three nor more than nine directors.''—1 Mills' Ann. Stats., sec. 585.

The articles of incorporation, in enumerating the objects and purposes of the organization of the corporation, provide:

''Art. II.   (a)   To buy, sell and operate mines and mining property.

(b)   To * * * hold, operate, let or dispose of any and all kinds of property, real, personal and mixed.

(c)   To do any and all things that may be requisite, proper, useful or necessary to carry on, or that are incidental to, a general mining, m i l l i n g, smelting or sampling business.''

''And among the express powers conferred upon the board of directors of the company are the following:

''Art. III.   The board of directors may issue and deliver certificates of full-paid and non-assessable stock in exchange and payment for mining and

other property, machinery and buildings acquired by purchase, bond, lease or otherwise, and for necessary and proper services, rendered or to be rendered, upon such terms and to such amount as the said board of directors may deem expedient.''

Art. V vests the control and management of the affairs and concerns of the company in a board of directors, to consist of five persons, and which directors are to continue in office until their successors are duly elected.

By its charter the corporation thus had the power to make a lease, and, by the charter, it conferred upon the board of directors the management of its property. One of the modes of managing and operating its property, common in the country, is the leasing of its property. In Cook on Corporations (4th ed.), vol. 2, § 709, it is said:

''The law seems to be clear that all corporate contracts are to be made by the directors. This includes the original contracts as well as modifications of them. If a contract is within the express or implied powers of the corporation, then the directors need not consult the stockholders, nor follow their wishes, even though the latter constitute a majority * * * and though these stockholders object in meeting assembled or individually in the courts. Thus a lease of the corporate property is authorized, not by the stockholders, but by the directors.''

See Note 8 to this section. Also, § 712 *Id.; Beveridge v. New York,* 112 N. Y. 1; *Hoyt v. Thayer Ex.,* 19 N. Y. 216; *Ardesco v. Oil Company,* 66 Pa. St. 375-381-2.

We think the lease a valid one. The judgment will be reversed with instructions to dismiss the case as to appellant Root, and with leave to appellee to amend her complaint as to Whipple and Mosher as she may be advised.

Judgment reversed.          *Reversed.*