JOHN BARR *vs.* THE BARTRAM & FANTON MANUFACTURING
COMPANY AND OTHERS.

A court of equity will not, upon the petition of a general creditor, restrain a
corporation from selling its entire property to a stockholder or director, where
the sale is made with no fraudulent intent, for an adequate price, and for the
purpose of paying its debts, and where no stockholder objects.

BILL IN EQUITY for an injunction and to set aside a convey-
ance of real and personal property; brought to the Superior
Court in Fairfield County. The facts were found by a com-
mittee and the case reserved for the advice of this court.
The case is fully stated in the opinion.

*Taylor*, for the petitioner.

*Booth* and *Tweedy*, for the respondents.

PARDEE, J. The respondent corporation, prior to the year
1874, had been engaged in the manufacture and sale of
sewing machines. The business proving unsuccessful, the
company determined to discontinue it, and in July, 1874,
sold and conveyed all its assets, real and personal, to the
respondent Hull, a stockholder of the company, for the pur-
pose of obtaining money for the payment of all its indebted-
ness. The petitioner claims to be a creditor of the company.

With regard to this sale, the petition contains the follow-
ing allegations:

"That the said Bartram & Fanton Manufacturing Com-
pany, through and with the agency of Frederick A. Hull, of
said Danbury, on the 3d day of July, 1874, fraudulently bar-
gained, sold and conveyed, by an instrument of that date, at
a grossly inadequate and insufficient price therefor, all the
assets and estate, both real and personal, of said company,
of every name and nature whatever, to said Hull, for the
benefit of said Hull and certain directors and stockholders of
said company, who were to unite with him in paying for and
purchasing said assets; and said Hull and said company

intended to so apply and appropriate the assets and the avails thereof as said Hull and said company might desire, to the payment of claims and debts against said company accruing subsequent to said 15th day of March, 1869, and to the exclusion of the said claim and demand of this petitioner, and for the benefit of said Hull and his co-purchasers as aforesaid, by means of such grossly inadequate and insufficient price. That said Hull for a long time prior to, and at the time of said pretended sale, was a director of said company, and was also the secretary, treasurer and general manager of said company, and was well acquainted with the assets, rights, interests, franchises and liabilities and pecuniary condition of said company, and of the great value of the assets, rights and interests of said company, so bargained and sold to him as aforesaid. That said Hull, well knowing the premises, and with the fraudulent purpose of securing the ownership and control of all the rights, interests and franchises of said company for the individual benefit of himself and certain others hereinafter mentioned, did with the aid and assistance of and in conjunction with certain other directors and stockholders of said company, combine and unite in the obtaining and securing, against the written protest of certain stockholders of said company thereto presented at said meeting and read thereat, the passage of the necessary votes of said stockholders and of said directors, authorizing the said sale to him, solely and individually in form, but in truth and in fact for the benefit of him, the said Hull, and his co-directors and other stockholders individually, at the greatly inadequate price of sixty-three thousand dollars, which sum is greatly below the real value of the same, and intending to realize and appropriate thereby all the benefits and advantages resulting from said sale and purchase to themselves, said Hull and said others so uniting with him individually, in fraud of the rights of the petitioner and other creditors and stockholders of said company. And that, in the making of said pretended sale, the said Hull and his said co-purchasers were, and were acting as, both sellers and purchasers of said assets; and that said sale for this reason was

wholly fraudulent and void, as to the petitioner as a creditor of said company, and also as to the stockholders, who protested and do still protest against said sale."

With regard to the matters so alleged, the report of the committee finds as follows :

" The respondent corporation did, July 3d, 1874, sell and convey all its assets and estate, both real and personal, to the respondent Hull. Mr. Hull, at the time of this conveyance, was, as alleged in the petition, a stockholder and one of the eleven directors of the company. He was also its secretary, and had been treasurer up to July 2d, and had also been its general agent in the conduct of its business so long as it was in business. He was also, as alleged in the petition, well acquainted with the assets, rights, interests, franchises, liabilities and pecuniary condition of the company, and of the value of the assets, rights and interests bargained and sold to him. He expected and intended, upon transfer of the property to him, to form a new association to carry on business with him, and before the purchase was completed had spoken to several persons, and among them to some who were directors of the defendant corporation on that subject, and they had given him encouragement that they would unite with him in forming a new company, the understanding being that the new company should purchase from Mr. Hull the property transferred to him by the old company, at the price Mr. Hull paid for it. The parties to this arrangement and the terms were not definitely settled, and nothing was done binding upon Mr. Hull or upon any others, and no other person than Mr. Hull was legally or equitably interested in the purchase.

" On the 20th of June, 1874, a protest was received by the secretary and communicated to the company, signed by several stockholders, protesting against the directors selling the company's property to themselves at $60,000, and the petitioner did, as alleged in his petition, before the sale, cause the proper officers of the company to be reminded of the matters alleged in said petition and informed Mr. Hull of all the matters so alleged and of the petitioner's right in the

premises. The terms of the sale ultimately agreed upon and which are fully expressed in a bond that was executed by Hull, were that Hull should pay for the property $60,000, and a further sum sufficient to pay the debts of the company, not exceeding $3,000. The vote in the stockholders' meeting upon the sale on those terms stood 1952 in favor of it, and 246 against it. In the directors' meeting the vote for the sale was passed with but one dissenting vote. Since the sale no stockholder has attempted to interfere with it.

"The conveyance is not in fact in fraud of the stockholders or of the creditors of the company, nor in prejudice of the rights of stockholders or creditors. The respondents intended to apply the proceeds of the sale to the payment of the company's debts, not treating the petitioner's claim as a preferred debt and not admitting it to be a debt at all, but they made what they then believed to be adequate provision for its payment in the event that it should be adjudged a valid demand. Upon the question whether the property was sold at an adequate price it is difficult to form an opinion. The real estate and machinery was unsaleable and could not be said to have any market value. The company was involved in a debt which it must pay or go into bankruptcy; in any event a forced sale was inevitable. The property cost more than double what it sold for. It had been inventoried by the respondent Hull, as late as the preceding April, at $135,000, exclusive of patents. It is the opinion of the committee that its intrinsic value is somewhat greater than $63,000, but that if the sale should be set aside in conformity with the prayer of the petitioner, it could not be again sold for so much money as Mr. Hull has agreed to give for it. Under these circumstances the committee cannot find that the sale was for an inadequate price."

From the facts reported to the court it is difficult to discover any sufficient reason for asking the aid of a court of equity. The respondent corporation was in the performance of the first duty of a debtor; it was endeavoring to provide means for the speedy payment of all creditors equally; and it was judiciously converting its assets into money for that

purpose. By moving the court for an injunction the petitioner has put in peril a contract of sale which is probably more advantageous to the corporation and its creditors than any other which could be substituted for it; and has apparently postponed the day of payment not only for himself but for his fellow creditors; indeed, for all parties, there would seem to be more of peril than protection in the bill.

The petitioner also alleged in his bill that he was a preferred creditor, and that his debt became a first lien on the assets of the corporation after the payment of certain debts existing March 15th, 1869; but the finding of the committee is adverse to this claim, and places him in the position of a general creditor, if indeed he is a creditor at all. He has proved no fact which would give him the right to impeach the sale to Hull.

A court of equity will not, upon the petition of a general creditor, restrain a corporation from converting its assets into money by a sale thereof to a stockholder, when such sale is not in fact in fraud of the stockholders or of the creditors, nor in prejudice of the rights of either; when no stockholder objects; and when the sale is made for an adequate price, with the intent to apply the proceeds thereof to the payment of the full amount of the debts of the company, or an equal proportion of every debt.

We advise the Superior Court to dissolve the temporary injunction and dismiss the bill.

In this opinion the other judges concurred.