OLIVER *v.* HENRY QUELLMALZ LUMBER & MANUFACTURING COMPANY.

Opinion delivered April 19, 1926.

1. CORPORATION—DEALINGS WITH DIRECTOR.—A director of a corporation is not prohibited from dealing with the corporation upon the principle of agency where the corporation was represented by other directors who constituted a majority of the board.

2. CORPORATIONS—CONTRACTS WITH DIRECTORS.—Contracts between corporations and their directors are not void but voidable.

3. CORPORATIONS—RIGHTS OF CREDITORS TO ATTACK CONVEYANCES.—When a sale of property of a corporation to one of its directors

is attacked by its creditors, they are not clothed with the same rights to set aside the transaction as those possessed by the stockholders; the rights of the creditors depending upon the fraudulent character of the sale.

4. CORPORATIONS—VALIDITY OF CONVEYANCE.—A deed made by a corporation to one of its directors for the purpose of transferring the property to a third person, which purpose was subsequently consummated by a conveyance to the latter for an adequate consideration, *held* valid, in absence of proof that the corporation was insolvent at the time of its excution, or that the deed was executed to hinder or delay creditors in collecting their debt.

5. JUDGMENT—LIEN.—A judgment obtained by a creditor against a corporation is not a lien upon land which it had previously conveyed to one of its directors, and the judgment-creditor acquired no lien by levy of an execution upon the land after the director had conveyed the land for valuable consideration to a third person.

Appeal from Clay Chancery Court, Western District; *J M. Futrell,* Chancellor; affirmed.

### STATEMENT OF FACTS.

This is a suit in equity by the Henry Quellmalz Lumber & Manufacturing Company against G. B. Oliver Jr. and Charles L. Payne, as sheriff of Clay County, Arkansas, to have annulled and set aside a sale under execution of the lands described in the complaint of G. B. Oliver Jr., and to restrain Charles L. Payne, as sheriff, from executing a deed to him as purchaser under said execution sale.

The lands in controversy originally belonged to the Ferguson & Wheeler Land, Lumber & Handle Company, a corporation duly organized under the laws of the State of Missouri. William Ferguson was the president and Henry Schwauer was the secretary of said corporation in October, 1914, at the time said corporation conveyed said lands to William Ferguson. The deed from the Ferguson & Wheeler Land, Lumber & Handle Company was executed to William Ferguson on the 2d day of October, 1914, and was a warranty deed in common form. The deed recites a consideration of $1 and other valuable consideration paid by William Ferguson. The deed was signed as follows: "Ferguson & Wheeler Land,

Lumber & Handle Company, by William Ferguson, President. Seal. Henry Schwauer, Sec'y.'' The deed was duly acknowledged before a notary public by William Ferguson, as president of said corporation, and was duly filed for record on the 6th day of October, 1914. A certified copy of the directors' meeting authorizing the execution of the above deed is as follows:

''Directors' Meeting.

''Be it remembered:

''That, pursuant to notice given, a meeting of the board of directors of the Ferguson & Wheeler Land, Lumber and Handle Company, a corporation, was duly convened and held at the office of said company in the city of Poplar Bluff, in the county of Butler, and State of Missouri, on the 24th day of September, 1914, there being present at said meeting William Ferguson, George B. Wheeler, and Henry Schwauer, the following resolution was unanimously adopted:

''Resolved that, for and in consideration of one dollar and other valuable consideration, the Ferguson & Wheeler Land, Lumber & Handle Company convey to William Ferguson the following described lands, of which it is the owner thereof, towit: (Describing the lands in controversy in this suit); in the county of Clay and State of Arkansas; that the president and secretary be and they are directed to execute and deliver a good and sufficient deed to convey said lands.''

''State of Missouri,

County of Butler.

''I, the undersigned, do hereby certify that the above and foregoing is a true and complete copy of the record and proceedings of a meeting of the board of directors of the Ferguson & Wheeler Land, Lumber and Handle Company, held at the office of said company in the city of Poplar Bluff, in the county of Butler and State of Missouri, on the 24th day of September, 1914, as fully as the same appears of record in the office of said company in the records thereon.

"Attest: Henry Schwauer, Sec'y. William Ferguson, President."

On the first day of September, 1920, William Ferguson executed a deed to said land to Henry Quellmalz, which was duly acknowledged on the 9th day of September, 1920, and filed for record on the 26th day of October, 1922. The consideration recited in the deed is $26,686.80, payable as follows: One thousand in cash, the assumption by Henry Quellmalz of a mortgage debt for $10,000 and the accrued interest due the Central States Life Insurance Company of St. Louis, and the balance in deferred payments evidenced by promissory notes.

The deed to Henry Quellmalz was for the benefit of the Henry Quellmalz Lumber & Manufacturing Company, which was the real purchaser of said lands. Henry Quellmalz died intestate on the 25th day of October, 1922, and his heirs, since his death, have conveyed the lands in controversy to the Henry Quellmalz Lumber & Manufacturing Company.

Momme O. Monsen obtained judgment against the Ferguson & Wheeler Land, Lumber & Handle Company on the 10th day of November, 1914, in the sum of $1,203.50. Execution was issued on this judgment by the clerk of the circuit court on the 26th day of October, 1922. The sheriff of Clay County, Arkansas, levied the execution upon the lands in question and issued a certificate of purchase to G. B. Oliver Jr., who became the purchaser thereof at said execution sale. The tax records show that for the year 1914 the lands in question were forfeited to the State for the nonpayment of taxes and redeemed by Ferguson & Wheeler on July 19, 1915; that William Ferguson paid the taxes for the years 1915, 1916, 1917, 1918 and 1919; that the taxes for the years 1920 and 1921 were paid by Henry Quellmalz Lumber & Manufacturing Company.

The chancellor was of the opinion that the execution sale whereby G. B. Oliver Jr. became the purchaser of said lands was void and should be set aside, and that Charles L. Payne, as sheriff of Clay County, Arkansas,

should be restrained from executing a deed under said execution sale, and that said execution sale should be canceled as a cloud upon the title of the Henry Quellmalz Lumber & Manufacturing Company.

A decree was entered of record in accordance with the findings of the chancellor, and to reverse that decree G. B. Oliver Jr. has prosecuted this appeal.

*Harper E. Harb* and *G. B. Oliver,* for appellant.

*C. T. Bloodworth,* for appellee.

HART, J., (after stating the facts). The record shows that the lands in question originally belonged to the Ferguson & Wheeler Land, Lumber & Handle Company, a Missouri corporation, and that it conveyed them to William Ferguson, who was its president. It is contended that, as Ferguson was president of the corporation and a member of its board of directors at the time the lands in question were conveyed to him by the corporation, he occupied such a fiduciary relation to the corporation and its creditors as disqualified him from purchasing at all, since, in doing so, he would act in a double capacity, and his interest as purchaser would conflict with his duty as a director.

In the transaction in question the corporation was represented by its other directors, who constituted a majority of the board, and Ferguson dealt with such majority. Under such circumstances the principle of agency does not apply, and Ferguson was not disqualified from dealing with the corporation, when so represented by other agents.

This court has expressly adopted the rule that contracts between corporations and their directors dealing with corporate assets are not void, but voidable. *Ward* v. *McPherson,* 87 Ark. 521, and *Nedry* v. *Vaile,* 109 Ark. 584, and cases cited.

When a sale of the property of a corporation to one of its directors is attacked by its creditors, they are not clothed with the same rights to set aside the transaction as those possessed by stockholders of the corporation. The right of a creditor to impeach the transaction de-

pends upon its fraudulent character. A clear and concise statement of the rule governing cases of this sort is contained in Fletcher's Cyclopedia of the Law of Private Corporations, vol. 8, § 5052, p. 8664. It is as follows:

"The doctrine which prevents directors from binding a corporation by contract in which they have an interest adverse to that of the corporation does not of itself give the creditors of the corporation the right to attack such a transaction in cases where the corporation or its stockholders could attack it. The fiduciary relation existing between the corporation and the directors does not authorize creditors to attack a transfer regardless of the fairness or unfairness of the transaction, but, in order that they may impeach it, they must show that the corporation was insolvent at the time of the transaction, or that it was entered into with the intent to hinder, delay or defraud them." See also Thompson on Corporations, 2 ed., vol. 2, § 1227; *O'Conner Min. & Mfg. Co.* v. *Coosa Furnace Co.*, 95 Ala. 614, 10 So. 290, 36 Am. St. Rep. 251; *Swentzel* v. *Franklin Inv. Co.*, 168 Mo. 272, 67 S. W. 596; *Crymble* v. *Mulvaney*, 21 Colo. 203, 40 Pac. 499; *Barr* v. *Bartram & Fanton Manufacturing Co.*, 41 Conn. 506; and *Buell* v. *Buckingham*, 16 Iowa 284, 85 Am. Dec. 516.

According to the authorities just cited, the mere fact that the corporation in selling the lands dealt with Ferguson, its president, does not by itself render the transaction fraudulent. Of course such fact is a circumstance to be considered along with the other facts and circumstances in the case as tending to show fraud when the transaction is assailed by a creditor.

In the present case, the resolution passed at the directors' meeting shows that there were three directors of the corporation, including William Ferguson, and that the other two directors authorized the transfer of the lands to Ferguson. It recites a consideration of $1 and other valuable consideration. The record shows that the Henry Quellmalz Lumber & Manufacturing Company was negotiating with the Ferguson & Wheeler Land,

Lumber & Handle Company for the purchase of said lands, and that the transfer was made to William Ferguson so that he could convey the lands to the Henry Quellmalz Lumber & Manufacturing Company when the sale should be consummated between the parties.  Subsequently Ferguson conveyed the lands to Henry Quellmalz for the sum of $26,686.80.  One thousand of this amount was paid in cash, $10,000 was the assumption of a mortgage to an insurance company, and the balance was in notes signed by the grantee.  The deed was made to Henry Quellmalz for the benefit of the Henry Quellmalz Lumber & Manufacturing Company.  He died intestate, and his heirs conveyed the lands to the Henry Quellmalz Lumber & Manufacturing Company, the plaintiff in this action.  This constitutes a complete chain of title in the plaintiff.  The deed to Ferguson was executed by himself as president and attested by the secretary of the corporation, which was the grantor in the deed.  The deed also contained the corporate seal of the corporation. This constituted a *prima facie* showing that the grantor as such corporation was regularly incorporated, and that the president and secretary were authorized to make the deed.  *Cotton* v. *White,* 131 Ark. 273.

Besides this, the resolution, which was unanimously adopted by the directors, gave the president and secretary express authority to execute the deed.  It is true that the deed does not purport to have been acknowledged by the secretary, but it does indicate that he signed it and attached the corporate seal.

Moreover, it was a matter of no concern to the creditors of the corporation whether it was acknowledged at all or not.  As we have already seen, it was good against the creditors unless the corporation was insolvent at the time the deed was executed, or unless the deed was made to hinder the creditors in the collection of their debts.  There is nothing in the record tending to show either that the corporation was insolvent or that the lands embraced in the deed constituted all the property of the corporation.  The only suspicious circum-

stance was the execution of the deed by the president of the corporation to himself. Under the authorities cited above, that fact, standing alone, does not show fraud. Besides that, the record contains a reasonable explanation of it. The title was placed in Ferguson for the purpose of immediately completing a sale which was already in contemplation of the parties. When the sale was finally completed by the execution of the deed to Henry Quellmalz, the consideration was recited as one thousand dollars in cash and the assumption by the grantee of an existing mortgage of $10,000. Notes of the grantee were given for the balance of the purchase money. So far as the record discloses, the consideration was adequate. The deed was made by the Ferguson & Wheeler Land, Lumber & Handle Company before the judgment upon which the execution was issued was rendered. Hence the judgment was not a lien upon the lands when it was rendered.

The execution which was levied upon the lands was not issued until the 26th day of October, 1922. The deed from Ferguson to Henry Quellmalz, which finally completed the sale between the two lumber companies, was executed and delivered on the first day of September, 1920. Therefore no lien was fixed upon the lands by the rendition of the judgment, and no lien was afterwards fixed on it by the levy of the execution. *Sears* v. *Setser,* 111 Ark. 11.

It follows that the purported sale under the execution was void, and that G. B. Oliver Jr., the purchaser at the sale, acquired no title whatever to the lands in question. The chancellor was correct in so holding, and the decree of the chancery court will be affirmed.