Harris *v.* United Service Company.

Opinion delivered November 24, 1930.

*Chas. Jacobson,* for appellant.

*Robinson, House & Moses* and *Harry E. Meek,* for appellee.

McHANEY, J. Sometime prior to April 1, 1928, James Levy, who desired to go into the cleaning and pressing business for himself, approached appellant to interest him in such business. An agreement was reached, whereby each was to put up one-half the necessary capital, appellant was to erect a building at Prospect and Palm, city of Little Rock, with two store rooms, the inside room to be occupied by the proposed business. The room was to be specially arranged for the business, with fireproof walls, and a portion of the expense thereof was to be borne by the business. They agreed upon a lease for five years from the time the building should be ready for occupancy at a monthly rental of $125 for the first two years and $140 monthly for the remainder of the term. Thereafter the building was completed, the proposed business incorporated under the name of Bon Ton Cleaners, with Levy, his mother and appellant as stockholders, directors and officers, Mrs. Levy being a nominal stockholder in order to form a corporation. The lease agreement was then prepared, in accordance with the former understanding, and executed, running for five years from April 1, 1928. The Bon Ton entered into possession on that date and operated the business, paying the rent regularly each month until the summer of 1929, when it was merged or consolidated with a number of other cleaning establishments under the name of United Service Company, appellee. It (the United) thereafter paid the monthly rental to appellant until April 1, 1930, when the increased rental reserved in the lease became effective. It refused to pay the rent for April, moved out and surrendered possession on April 13, 1930. This suit followed to collect the rent. Appellee defended on the grounds that the rent was exorbitant and that the lease was invalid because of appellant's relation to the Bon

Ton and appellee, he being secretary and treasurer of the former and was elected president of the latter. The court agreed with appellee, canceled the lease and gave judgment for a reasonable rental for April and May in the sum of $200.

It is true, as a general proposition and as suggested by counsel for appellee, that "No man can serve two masters: for either he will hate the one, and love the other; or else he will hold to the one, and despise the other," Matt. 6, 24; but we are of the opinion that that principle has no application here. We know of no rule of law in this State that prohibits a person who may be an officer or director in a corporation from dealing with the corporation, such as leasing his property to it, upon such terms as may be agreed, upon, in the absence of fraud, either actual or constructive, and in good faith and without prejudice or unfairness to the corporation. This court has never adopted the extreme rule that contracts between a corporation and its directors are void, but only voidable, if not made in good faith and are unfair to the corporation. In *Ward v. McPherson,* 87 Ark. 521, 113 S. W. 42, it was said: "Some authorities hold such contracts to be absolutely void, but the weight of American authority is that the contracts between corporations and their directors, dealing with the corporate assets, are not void but voidable. Where they are held voidable, however, all agree that they are more closely scrutinized than ordinary contracts; and the burden is upon those claiming under them to prove that they are made in good faith and fair to the corporation." This is the correct rule and has never been departed from in this State.

Here the facts are that the contract of lease was agreed upon, that is, the terms of it, before the house was ever built and before the corporation known as Bon Ton Cleaners was organized. James Levy was under no disability, was neither an infant nor an incompetent. If there had been no merger, no doubt no question would ever have been raised about the validity of the lease or

the amount of the rental. But, when the merger took place, there is no evidence in this record that appellant concealed or attempted to conceal any fact relating to the status of the Bon Ton from any of the others whose properties were being merged into the new corporation. A recent audit of its business made by a reputable firm of public accountants was before all the interested parties. This audit called particular attention to the terms of the lease and they either knew its terms, or could have known them by the slightest diligence. In acquiring the property of the Bon Ton appellee acquired this lease. It operated under it for a period of eight months regularly paying the rents to appellant without question to April 1, 1930. It must be held to have known the facts regarding the lease and acquired it, together with all the other property of the Bon Ton with whatever benefits and burdens it carried. We can see no reason why this lease, valid between the original parties to it, operated under as valid for two years, eight months of which time by appellee, should be canceled when the time has come for the small increase in the monthly rental.

The decree will therefore be reversed and the cause remanded with directions to enter a decree in accordance with this opinion.