GEOMINERALS CORPORATION *v.* GRACE.

5-2107                                338 S. W. 2d 935

Opinion delivered October 10, 1960.

*Pickens, Pickens & Boyce,* by *Fred M. Pickens, Schwartz, Schwartz* and *Landsman,* by *Burnett Schwartz,* St. Louis, Mo., *Lee Young,* Union, Mo., for appellant.

*James A. Finch, Jr.,* Cape Girardeau, Mo., *M. F. Highsmith,* for appellee.

ED. F. McFADDIN, Associate Justice. The appellant, Geominerals Corporation, seeks relief against appellees: Grace, one of its stockholders, and Potashnick, one of its directors. The claimed relief arises because of dealings the appellees had with the Corporation. Geominerals is a Delaware corporation, undertaking to m a k e money through mineral leases and developments. Its principal place of business is in Louisiana, but it is duly domesticated in Arkansas. At all times herein, appellees Grace and Potashnick were stockholders in Geominerals Corporation; and from October 1957 to October 1958 Potashnick was a director of Geominerals.

In February 1957 Geominerals paid Grace $175,000 for 250,100 shares of stock in U. S. Manganese Corporation, which is an Arkansas corporation organized, *inter alia,* to engage in manganese development. This sale by Grace to Geominerals is not under attack in this case. In order to pay Grace the $175,000 Geominerals borrowed $109,000 from appellee Potashnick, who was then a stockholder, but not a director, of Geominerals. The debt was evidenced by a note due in thirty days, bearing 5% interest,

and secured by a pledge of the 250,100 shares of stock in U. S. Manganese Corporation. As aforesaid, in October 1957, Potashnick was elected a director of Geominerals, and was such director until October 1958.

At the request of Geominerals, Potashnick several times extended the due date of the note, but in the fall of 1957 he began to press Geominerals for payment. In early December 1957 he set a date for the sale of the collateral (the 250,100 shares of U. S. Manganese stock); and appellee Grace was prepared to make a bid on this stock for the amount of the note and interest, and then proposed to sell one-half of the 250,100 shares of stock to Potashnick for one-half of the amount that Grace had paid. Because he was importuned by some of his fellow directors of Geominerals, Potashnick postponed the scheduled December sale of the collateral, but set a final date in January, 1958, when, if not paid, he would foreclose his collateral, and also proceed against the directors who had endorsed the note.

When Geominerals learned of Grace's interest in the stock he was requested to make a loan to Geominerals for sufficient to retire the Potashnick note and interest; and Geominerals offered Grace 50,100 shares of the stock as a bonus if he would make Geominerals such a loan. Grace advised that he was not interested in making any loan, but was interested in buying all or a part of the 250,100 shares of the U. S. Manganese stock. Since the stock had cost Geominerals $175,000 it wanted some opportunity to try to sell the stock either for a profit or for enough to pay the cost; and the President of Geominerals (Mr. Tschirn) and Grace had telephone conversations about the matter. On January 17, 1958 there was a meeting of the directors of Geominerals held in Louisiana — at which Potashnick was absent — and the following Resolution was adopted:

"RESOLVED, that Charles W. Tschirn be given the authority to execute a sales contract in behalf of the Corporation to sell 250,100 shares of presently held U. S. Manganese Corporation stock under the following terms and conditions:

"(1) Geominerals will sell 250,100 shares of U. S. Manganese Corporation stock to R. B. Potashnick and Preston W. Grace in exchange for a note being held by R. B. Potashnick in the amount of $109,000 plus accumulated interest.

"(2) Geominerals will receive an option from R. B. Potashnick and Preston W. Grace to purchase 200,000 shares of U. S. Manganese Corporation stock for the sum of $125,000. Said option shall become effective on August 2, 1958 and shall become null and void on October 1, 1958 . . ."

Clothed with the authority stated in the resolution, Mr. Tschirn acting for Geominerals, entered into the following contract with Potashnick and Grace:

"THIS CONTRACT, Made and entered into this 29th day of Jan. 1958, by and between GEOMINERALS CORPORATION, a Delaware Corporation hereinafter referred to as 'Seller', and R. B. POTASHNICK, of Cape Girardeau, Missouri, and PRESTON W. GRACE, of Batesville, Arkansas, hereinafter referred to as 'Buyers', WITNESSETH:

"(1) Seller agrees to sell and Buyers agree to buy 250,100 shares of stock in U. S. Manganese Corporation for the sum of $113,798.99, and Seller agrees to deliver the said stock certificate with stock power duly executed attached, and Buyers agree, upon receipt of said stock certificate on this date, to pay the purchase price to Seller.

"(2) Buyers hereby grant to Seller an option to purchase from them on or after August 2, 1958, for a period extending to and ending on October 1, 1958, all or any part of 200,000 shares of U. S. Manganese Corporation stock at a price of 62½¢ per share. If Seller herein elects to exercise said option, it shall give written notice thereof to Buyers, specifying the number of shares to be purchased. If such notice is given, Buyers agree to deliver stock certificate, with properly executed stock power attached, to Seller upon receipt of the purchase price therefor. This option to purchase shall expire October 1, 1958.

"IN WITNESS WHEREOF, the parties hereto have executed this instrument, Seller executing it by and through its President, Charles W. Tschirn, and Buyers executing this instrument by having the same executed on behalf of them by R. B. Potashnick."

These copied instruments are hereinafter referred to as the "Resolution" and the "Contract". Grace and Potashnick had the 250,100 shares of U. S. Manganese stock transferred on the books of U. S. Manganese Corporation and reissued: 125,000 shares to Grace and 125,100 shares to Potashnick. On September 30, 1958, Geominerals notified Grace and Potashnick that Geominerals would exercise its full option to purchase, but never made any tender of money. On October 14, 1958 Grace and Potashnick filed the present suit in the Independence Chancery Court against Geominerals, praying: ". . . that a declaratory Judgment be entered herein construing the terms and provisions of the written contract executed by the plaintiffs and defendants on January 29, 1958, and determining the rights of the plaintiffs and defendant under the terms of said contract and declaring specifically that defendant, Geominerals Corporation, has no right, title or interest in and to all or any part of the 250,100 shares of U. S. Manganese Corporation stock . . ." By answer and cross complaint Geominerals claimed, *inter alia*: (1) that the contract of January 29, 1958 involving the stock was not a sale of the stock with an option to repurchase, but was, in fact, a loan and a cloak for usury; and (2) that Grace, as a stockholder, and Potashnick as a director of Geominerals, did not deal fairly with the Corporation. Trial in the Chancery Court resulted in a decree in favor of Grace and Potashnick on all points; and from that decree Geominerals brings this appeal, presenting the issues now to be discussed.

I. *The Contract Of January 1958*. Geominerals most vigorously urges that the contract of January 1958 (as previously copied) was a loan, and not a sale of the stock with an option to repurchase. Of course, if Geominerals should prevail on this point it would recover the entire 250,100 shares of stock and the debt would be cancelled

because it is practically conceded that there would be usury[1] in the transaction. So the first question is, whether the transaction of January 29, 1958 was in fact a loan. The rule is, that one who seeks to convert an absolute conveyance into a defeasanced instrument has the burden of proving the defeasance by evidence that is c l e a r , unequivocal, and convincing. *Newport* v. *Chandler,* 206 Ark. 974, 178 S. W. 2d 240, 155 A.L.R. 1096; and *Marshall* v. *Marshall,* 227 Ark. 582, 300 S. W. 2d 933.

Tested by the rule of these cases, we cannot say that the Chancery Court was in error in holding that Geominerals failed to discharge such burden. It is true that the President of Geominerals, Mr. Tschirn, and three of the Directors testified that *they intended* all the time for the transaction to be a loan. But there are many circumstances which negative the effect of such testimony. Grace was approached to make a loan and he said he was not interested in a loan but that he was interested in buying the 250,100 shares because at that time it was believed that U. S. Manganese would be involved in a merger which would increase the value of its stock. Furthermore, the Potashnick note had on it the personal endorsement of some of the Directors of Geominerals, and by the sales contract of January 1958 these Directors escaped all personal responsibility. If the transaction were to be a loan, certainly Potashnick would not have released the personal endorsements on the obligation. Again, after executing the contract on January 29, 1958, the President of Geominerals advised all the stockholders that by paying the note of $109,000 the financial position of Geominerals had been considerably improved, and that Geominerals still had the option to reacquire the stock. The same directors, who testified that they *intended* the transaction to be a loan, admitted on cross examination that they voiced no objection when they saw the financial reports to the stockholders which stated that the transaction was a sale.

---

[1] This is true because the debt on January 18, 1958 was $113,798.99, whereas the option figure for repurchase was $125,000; and in addition 50,100 shares of stock would be retained by Grace and Potashnick.

Finally, on September 26, 1958, Geominerals, while still unable to obtain funds to reacquire the stock, nevertheless wrote a letter to Potashnick and Grace as follows:

"Please accept this letter as notice that Geominerals will exercise a certain option dated January 29, 1958 by and between Preston W. Grace, R. B. Potashnick, and Geominerals Corporation.

"Geominerals will exercise the full option to purchase 100,000 shares of U. S. Manganese stock from Preston W. Grace at 62½¢ per share, and 100,000 shares of U. S. Manganese stock from R. B. Potashnick at 62½¢ per share.

"Please make the stock available on October 1, 1958 at which time Geominerals will deliver the full purchase price."

If Geominerals had thought on September 26th that the transaction was a loan, then it would not have been writing about exercising *the option to purchase.* Potashnick and Grace waited all of October 1st for Geominerals to pay the money to exercise the option to repurchase, but no money was ever paid and no money has ever been tendered. Instead, sometime in October 1958 Geominerals entered into a contract with a Mr. Hess, who agreed to finance the litigation to try to recover some part of the 250,100 shares of stock.

Without further discussion of the evidence, we conclude that Geominerals failed to offer the quantum of proof required to sustain its contention of a loan; and such holding disposes of all question of usury since the transaction was not shown to be a loan.

II. *Geominerals' Claim Against Grace.* Geominerals urges that even though we should hold — as we have — that the transaction of January 1958 was in fact a sale and option, nevertheless we should set the sale aside because appellee Grace[2] was a stockholder of Geominerals and

---

[2] Of course, Geominerals urges the same arguments against Potashnick *as a stockholder* that are urged against Grace; but we reserve the claim against Potashnick for Topic III of this opinion because he was also a director of Geominerals, and we are considering in this topic only the stockholder phase of the case.

could not lawfully exercise, as he did, the duress and business compulsion[3] on Geominerals which culminated in the contract of January, 1958.

As heretofore recited, Grace was only a minority stockholder in Geominerals and was never an officer or employee of the corporation. In 13 Am. Jur. p. 468, "Corporations" § 415, the holdings are summarized: "Shareholders, it is said, have as much right to contract with a corporation as if they were strangers, provided the contract is *bona fide*, . . . Stockholders of a corporation have the same right that strangers have to purchase its property, . . ." In Fletcher's "Cyclopedia of Corporations", Permanent Ed., Vol. 13, § 5737, many cases are cited to sustain the text: "As stated in a preceding chapter, there is nothing in the relation between a corporation and its stockholders which *per se* prevents dealings between them. A stockholder may deal with the corporation through its duly authorized officers and agents, making any contract with it which a stranger might make, and the transaction is just as valid as if it were between the corporation and a stranger, . . ." See also 18 C.J.S. p. 1163 "Corporations" § 489, *et seq.*; and see also annotation in 31 A.L.R. 2d p. 663. Tested by these rules, and bearing in mind that Grace was only a minority stockholder, we fail to see wherein Geominerals can now complain against Grace. That he drove a hard bargain is quite apparent, but he dealt with the corporation at arm's length and the Board of Directors of Geominerals understood the bargain that Grace was driving when it adopted the resolution (previously copied) authorizing the execution of the contract. Thus, insofar as Grace is concerned, the Chancery decree is affirmed.

III. *Geominerals' Claim Against Potashnick.* This is the point in the case that has given us the most concern. In February 1957, when Potashnick loaned Geominerals the $109,000, he was only a stockholder; and what we have said about Grace would apply to Potashnick if he had

---

[3] Appellant cites us to the annotation in 79 A.L.R. 655 entitled: "Doctrine of business compulsion"; but the facts in this case show no application for such a doctrine, even if permissible under our cases.

remained as only a stockholder. But in October 1957 Potashnick became a director in Geominerals and so continued until the annual stockholders' meeting in 1958. It was during the time when he was a director that he pressed Geominerals for the repayment of the loan and finally took the contract of sale in January 1958. A stockholder may deal with a corporation as Grace dealt in this instance; but a director owes the corporation a higher duty than does a mere stockholder. In *Ward* v. *McPherson*, 87 Ark. 521, 113 S. W. 42, we said:

". . . contracts between corporations and their directors, dealing with the corporate assets, are not void but voidable. Where they are held voidable, however, all agree that they are more closely scrutinized than ordinary contracts; and the burden is upon those claiming under them to prove that they are made in good faith and fair to the corporation. 2 Thompson on Corporations, §§ 4040-4049, 4060-4064; 3 Clark & Marshall on Corporations, p. 2302-2307, § 761; Helliwell's Supp. to Clark & Marshall, § 76; *Jones, McDowell & Co.* v. *Ark. Mech., etc. Co.,* 38 Ark. 17; *Searcy* v. *Yarnell,* 47 Ark. 269, 1 S. W. 319. The burden was upon Ward to show the fairness to the corporation of this lease, and this he has wholly failed to do."

To the same effect see also *Walker-Lucas* v. *Hudson Oil Co.*, 168 Ark. 1098, 272 S. W. 836; *Oliver* v. *Henry Quellmalz Co.*, 170 Ark. 1029, 282 S. W. 355; *Harris* v. *United Service Co.*, 182 Ark. 779, 32 S. W. 2d 618; and *Oil Fields Corp.* v. *Hess*, 186 Ark. 241, 53 S. W. 2d 444. The Arkansas rule is the rule generally. In Fletcher's "Cyclopedia on Corporations", Permanent Ed., Vol. 3, § 921, the above quoted Arkansas cases and cases from many other jurisdictions are cited to sustain this statement; ". . . the burden is on the director seeking to uphold the transaction not only to prove the good faith of the transaction, but also to show its inherent fairness from the viewpoint of the corporation and those interested therein." In 31 A.L.R. 2d 663 there is an annotation on dealings between a director and the corporation, and in regard to loans by a director the holdings are summarized in this language: ". . . a director or an officer of a corporation will not

be permitted to make a profit of his official position. He must give to the corporation the benefit of any advantage which he has obtained thereby . . ."

Tested by the holdings just summarized, we conclude that Potashnick did not offer sufficient proof to satisfy the burden resting on him to establish that the contract of January 1958 between him and the corporation was fair to the corporation. In January 1958 Geominerals owed Potashnick a debt and interest which amounted to $113,-798.99 and this debt was secured by 250,100 shares of stock in U. S. Manganese Company. Potashnick knew, or had notice, that Geominerals had paid $175,000 for this stock. The burden was on Potashnick to show that in January 1958 the 250,100 shares of U. S. Manganese stock had no greater value than the $113,798.99 which was the debt and interest then due Potashnick. If the stock had a greater value than $113,798.99 it was Potashnick's duty, as a director of Geominerals, to attempt the sale of the stock for the greater value and, after liquidation of his debt and interest, render the remaining balance to the corporation. He could not reap a windfall profit by pressing the corporation into delivering to him the stock at anything less than its full value.

Furthermore, in dealing with the corporation Potashnick accepted the benefits under a contract (*i.e.*, of January 1958) whereby if Geominerals should ever exercise its option it could never recover the entire 250,100 shares of U. S. Manganese stock but could only recover 200,000 shares; and that at a price in excess of what the Potashnick note and interest would have been at the time the option was exercised. We cannot say that this contract between Potashnick and Geominerals was fair to the corporation. It was a hard bargain to drive with a financially weak corporation that was struggling for its very existence. That this was known, or should have been known, to Potashnick is shown by the recitals in the minutes of the January 1958 meeting, which was the same meeting that authorized the Potashnick-Grace contract. These minutes read:

"Mr. Tschirn submitted an up-to-date financial statement to the Directors which showed the critical financial position of the Company at the present time. He stated that the Company had to secure $15,000 financing immediately, or the Company was in danger of Bankruptcy . . ."

Without further reviewing the evidence we conclude that Potashnick has not discharged the duty imposed on him of proving that his contract with Geominerals of January 1958 was fair to the corporation. The result is, that Geominerals must still have the right to pay Potashnick one-half of the original debt and interest[4] and recover of him the 125,100 shares of U. S. Manganese stock (which he received by virtue of his contract with the corporation in January, 1958), together with any dividends received by Potashnick on the stock since January 28, 1958. Geominerals should have sixty days from the date of this opinion in which to make said tender, but upon failure to make such tender, all rights of Geominerals to the said stock will be terminated. Only insofar as concerns Potashnick is the decree reversed. In all other respects the decree of the Chancery Court is affirmed, and the cause is remanded to the Chancery Court for further proceedings in accordance with this opinion. The costs of this Court are taxed, one-fourth against Potashnick and three-fourths against Geominerals.

ROBINSON, J. dissents on the first point. He is of the opinion that the sale was a loan and was usurious.

---

[4] As we calculate this figure, it would be $56,899.50 (one-half of the $113,798.99 for which amount Potashnick receipted Geominerals on January 29, 1958), together with interest thereon at the rate of 5% per annum (the rate of interest stated in the original note) from January 29, 1958 until paid.